**W. Warren SPARROW, on behalf of himself and Catherine Sparrow and of all other parents and children similarly situated, Plaintiff,**

**v.**

**Edwin GILL, Treasurer of North Carolina; Charles F. Carroll, Superintendent of Public Instruction for North Carolina; Marvin Ward, Secretary, Winston-Salem/Forsyth County Board of Education, Defendants.**

**Civ. No. 122 WS–68.**

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Heard June 20, 1969.

Decided Aug. 13, 1969.

Renn Drum, Jr., Randolph & Drum, Winston-Salem, N. C., for plaintiff.

Robert B. Morgan, Atty. Gen. of N. C., Ralph Moody, Deputy Atty. Gen., and Andrew A. Vanore, Jr., Staff Atty., Raleigh, N. C., for defendants Gill and Carroll.

W. F. Womble, and John L. W. Garrou, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendant Ward.

Before CRAVEN, Circuit Judge, and STANLEY and GORDON, District Judges.

CRAVEN, Circuit Judge:

Plaintiff brings this civil action seeking a declaratory judgment and injunctive relief declaring unconstitutional and preventing enforcement of Section 115–190.1, and a portion of Section 115–186(e) of the General Statutes of North Carolina. We hold Section 115–186(e) to be constitutional. We hold Section 115–190.1 unconstitutional as creating an unreasonable statutory classification.

## FACTS

The agreed upon facts are these:

The statutes claimed to be unconstitutional are N.C.G.S. Section 115–186 (e) (quoting only the portion attacked) and N.C.G.S. Section 115–190.1.

"No provision of this subchapter shall be construed to place upon the state, or upon any county or city, * * any duty to supply any funds for the transportation of pupils * * * who live within the corporate limits of the city or town in which is located the public school in which such pupil is enrolled or to which such pupil is assigned, even though transportation to or from such school is furnished to pupils who live outside the limits of such city or town." N.C.G.S. § 115–186(e).

*"Transportation continued for area annexed to municipality or included by consolidation of municipalities.—In* each and every area of the State where school bus transportation of pupils to and from schools is now being provided, such school transportation shall not be discontinued by any State or local governmental agency for the sole reason that the corporate limits of any municipality have been extended to include such area since February 6, 1957, and school bus transportation of pupils shall be continued in the same manner and to the same extent as if such area had not been included within the corporate limits of a municipality.

"In each and every area of the State where school bus transportation of pupils to and from school is now being provided, such school transportation shall not be discontinued by any State or local governmental agency for the sole reason that two or more municipalities have consolidated and the corporate limits of the new, consolidated municipality includes such area, and school bus transportation of pupils shall be continued in the same manner and to the same extent as if such area had not been consolidated and had not been included within the corporate limits of the new, consolidated municipality." N.C.G.S. § 115–190.1.

The gist of the complaint is that denial of school bus transportation to students of Catherine Sparrow's urban class while furnishing it to those students living outside the municipal boundaries as they existed on February 6, 1957, is a denial of equal protection of the laws, guaranteed by the Fourteenth Amendment. Plaintiff, W. Warren Sparrow, is the father of Catherine Sparrow, a grade school child, and both are citizens and residents of Forsyth County, North Carolina, residing in an area which was within the municipal limits on February 6, 1957, and which is one and one-half miles or more from Catherine's assigned school. Catherine is within the class of students denied state-provided transportation.

Defendant Gill is the Treasurer of the State of North Carolina, and as such is the chief fiscal officer of the state having ultimate control and supervision over the expenditure of funds for the State of North Carolina.

Defendant Charles F. Carroll is Superintendent of Public Instruction for the State of North Carolina and as such

is the chief administrative officer for the state supported public school system. He is ex officio secretary to and a member of the North Carolina State Board of Education.

Defendant Ward is Superintendent of the Winston-Salem/Forsyth County Public Schools, and as such is ex officio Secretary to the Winston-Salem/Forsyth County Board of Education. He is nominally a defendant but his position and that of the political entity he represents accords with plaintiff's prayer for relief.

From public tax funds, the State of North Carolina provides for some but not all students bus transportation to the public schools of the state. Pursuant to N.C.G.S. 115–181(f), the State Board of Education allocates funds to those county and city boards of education which elect to provide school transportation. N.C.G.S. 115–183(4) provides that local boards are not required to provide transportation for students living within one and one-half miles of their schools. No challenge is levelled at this provision.

In accordance with the statutory scheme here attacked, funds are not allocated for the transportation of statutorily disqualified students, namely, those residing in and attending school in areas within corporate limits as of February 6, 1957.

## PROCEDURAL QUESTIONS AND PLEAS IN BAR

■ All procedural questions and pleas in bar are resolved against the defendants:

(1) Jurisdiction in the sense of power under the Constitution and despite the Eleventh Amendment rests upon Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the most important and certainly the most famous legal fiction in American jurisprudence. This is actually, of course, a suit against the state and it has been settled for more than 60 years that federal courts may entertain such suits when ostensibly directed against state officials. *See* C. Wright, Federal Courts 157–158 (1963). Jurisdiction in the sense of congressional authority to inferior federal courts of limited jurisdiction rests upon 28 U.S.C. §§ 1343(3), 2201 et seq., 2281 et seq. The Congress in these statutes has granted authority to a district court of three judges to declare unconstitutional and enjoin the enforcement of any state statute, custom or usage that deprives any person of any right or privilege secured by the Constitution of the United States. There is no monetary limitation upon such jurisdiction.[1]

■ (2) It is urged upon us by the state that Sparrow lacks standing to attack the distinction between pre- and post-1957 annexation because she lives within an "old" part of the city. We disagree. As we have said, Sparrow is a member of the only one of three classes denied school bus service. The discriminatory grant of it to others denies her equal protection of the law and she may properly attack the distinctions that set apart and favor the other two classes. We think she has a "personal interest" that is "injured."[2]

■ (3) Defendants Carroll and Gill are properly joined as defendants

---

1. For a suggestion that federal question cases ought not be limited by monetary valuation, and seldom if ever are, see C. Wright, Federal Courts § 32 (1963). Because 28 U.S.C. § 1343 contains no such limitation, we are not asked to consider if jurisdiction would attach under § 1331 ($10,000 limitation). Although we do not decide, it seems probable that the value of bus service to plaintiff's class would greatly exceed that minimum amount.

2. For a scholarly and interesting argument that one need not have a personal interest and need not have personally been injured to have standing to bring such a suit, see Berger, Standing to Sue in Public Actions: Is it a Constitutional Requirement?, 78 Yale L.J. 816, 840 (1969).

because plaintiff asserts against them the right to be relieved from the results of their compliance with these statutes, and the action presents a question of law, common to all defendants, as to the statutes' constitutionality. Fed.R.Civ.P. 20(a). Joinder of these defendants and notice to the Governor and Attorney General as required by 28 U.S.C. § 2284 have assured adequate representation of state interests.

## THE CONSTITUTIONAL QUESTION

Though N.C.G.S. § 115–186(e), read literally, merely states that there shall be no duty upon the state to transport municipal students who attend in-city schools, the interpretation given the section is that neither shall the state have the option of transporting them. We are informed that the North Carolina Attorney General's interpretation of the section is that it prevents the State Board of Education from allocating to local boards funds for the transportation of municipal students. Counsel for all parties agree not only that the Attorney General so interprets the statute but also themselves insist that it is the only correct interpretation.

N.C.G.S. § 115–190.1 provides that areas receiving transportation as of February 6, 1957, shall not be denied it for the sole reason that the corporate limits have subsequently been extended to encompass those areas.

There are thus created three classes of students: (1) those residing outside municipal limits; (2) those residing inside municipal limits as of dates subsequent to February 6, 1957; and (3) those residing in areas which are now and were on February 6, 1957, inside municipal limits. Class 3 is the only class denied transportation. There are thus two classifications put to the constitutional test: (1) the distinction between county and city pupils, created by N.C.G.S. § 115–186(e); and (2) that between city pupils as of February 6, 1957, and city pupils becoming such

subsequent to the 1957 date, created by N.C.G.S. § 115–190.1.

■ Under the equal protection clause, the constitutional test to be applied is whether the classification is reasonable in the sense that it is based upon real distinctions between the classes vis-a-vis the subject of regulation. McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). For statutory classifications such as those under consideration here, this remains the test, notwithstanding the recent, rapid expansion of judicial review available under the equal protection clause in other areas. See Developments in the Law: Equal Protection, 82 Harv.L.Rev. 1065, 1124–32 (1969). This is not a "civil rights" case; nor is it a voting rights case; nor does it deal with any constitutional guarantee accorded special priority in the scale of human liberty. No one has a constitutional right to ride a school bus. His is merely the right not to be excluded from a benefit which is conferred by the state upon fellow citizens whose claim to it is no more "reasonable" than his.

At issue here is a state scheme for allocation of a limited amount of funds to confer benefits upon citizens in a manner reflecting an apparent state legislative determination that those funds will allow provision of transportation for some students, but are inadequate to provide it for all. These statutes, then, must be evaluated according to whether the state legislature could reasonably have concluded that transportation was more imperative for county students than for city students, and more imperative for those city students who became such after February 6, 1957, than for those who were such on that date.

■ Applying this test, we find N.C.G.S. § 115–186(e) wholly reasonable. The degree of urbanization of the entire state, alluded to by plaintiff, has not yet become so pronounced that the leg-

islature might not reasonably conclude that city students have easier access than do county students to public transportation; that they are more apt to have sidewalks and other pedestrian protections on their way to school; that they are more apt to participate in an "automobile" culture simplifying family transportation and the formation of carpools, than their county-dwelling counterparts. We think N.C.G.S. § 115–186 (e) is plainly constitutional.

 Under this test, however, N.C.G.S. § 115–190.1 fails. Its fatal flaw is the arbitrary date of February 6, 1957, which is wholly unrelated to the end apparently sought to be achieved: the allocation of limited transportation funds for the benefit of those students most needing bus transportation. To conclude that urbanization is more pronounced in those areas which were within municipal boundaries on February 6, 1957, than in those then without it, is to posit the timeliness of annexation efforts. This we cannot do—not for the reason that such a premise is per se constitutionally impermissible, but simply because there is nothing in the record to support such an hypothesis and it runs counter to common observation. Judges need not be blind to what other men see: that cities like Charlotte or Winston-Salem may have annexed areas since 1957 that are now more "urban" than areas long within the city limits of other towns in a declining or static growth pattern. For that matter, it sometimes may happen that even within the same city old parts are left behind by the growth pattern and the most urbanized sections are relatively new. The only possible purpose counsel suggests for this arbitrary date distinction is to save or limit expenditure of state funds. But such a purpose may be accomplished readily without irrational and arbitrary discrimination. The state may allocate its funds on any basis it chooses—or may cut off funds entirely—so long as it does not capriciously favor one group of citizens over another. Absent a minimally adequate basis for the distinction, the classification must fail. *Cf*. Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir., 1969).

### THE REMEDY

This practical effect is produced by our decision that N.C.G.S. § 115–190.1 is invalid while § 115–186(e) is valid: plaintiff partially "wins" her suit, yet she will not necessarily receive school bus service. The statutory scheme, only somewhat altered by our decision, still provides (§ 115–186(e)) that there is no "duty" to provide transportation to city pupils attending in-city schools. Should North Carolina adhere to the interpretation now given § 115–186(e), namely, that it prohibits appropriation of funds for the benefit of city pupils, the class of students excluded from service will include all pupils within municipal limits, however recently those limits may have been extended.

We have held the city-county distinction a constitutionally valid one. Whether it would be better and fairer to abolish it and go to a measured-distance-from-school basis as urged by plaintiff is a political question for the people and their legislative representatives. It is not for us to answer, and we would exceed our jurisdiction were we to attempt it.