**Henri Z. DEUTSCH et al., Plaintiffs,**

v.

**Dwight TEEL, acting Superintendent of Schools of the City of Milwaukee, et al., Defendants,**

**and**

**Barbara Thompson, Superintendent of the State of Wisconsin Department of Public Instruction, Intervening Defendant.**

**No. 74–C–630.**

United States District Court, E. D. Wisconsin.

Sept. 12, 1975.

Alan Marcuvitz and Howard B. Schoenfeld, Peregrine, Marcuvitz, Cameron, Peltin, Hersh & Lensky, S.C., Milwaukee, Wis., for plaintiffs.

Patrick B. McDonnell, Asst. City Atty., Milwaukee, Wis., John William Calhoun, Asst. Atty. Gen., Madison, Wis., for defendants.

Before FAIRCHILD, Chief Circuit Judge, and REYNOLDS and WARREN, District Judges.

## OPINION AND ORDER

WARREN, District Judge:

This is an action whereby the named plaintiffs, on behalf of themselves and the class they represent, seek declaratory and injunctive relief to restrain the enforcement of a Wisconsin statute regulating the busing of school children; in the alternative, the plaintiffs seek to restrain the enforcement of the policy of the Board of School Directors of the City of Milwaukee through which the provisions of the questioned state statute have been implemented.

The controversy at issue here concerns the recent relocation of Hillel Academy, a private school in the Milwaukee metropolitan area: formerly located within the City of Milwaukee, it has since moved to facilities at a point some 400 feet beyond the city limits. The plaintiffs in the action are a class of persons who are parents of those Hillel Academy pupils enrolled in kindergarten or grades one through six and whose residence is in the City of Milwaukee at a point greater than two miles from the current location of the Academy. Although they were provided with state-financed school bus service prior to the change of situs, this service has been denied them since that move. The defendants include the Acting Superintendent of Schools of the

City of Milwaukee, one Dwight Teel, and the individual members of the Board of School Directors of the City of Milwaukee. The Superintendent of the State of Wisconsin Department of Public Instruction has been allowed to enter the action as an intervening defendant.

The action is brought pursuant to 42 U.S.C. § 1983; jurisdiction lies under the provisions of 28 U.S.C. § 1343. *Lynch v. Household Finance Corporation*, 405 U.S. 538, 92 S.Ct. 1113, 31 L. Ed.2d 424 (1972). The complaint charges that deprivations of rights, privileges and immunities secured by the Constitution and laws of the United States have been inflicted by the defendants under color of state law, and seeks declaratory and injunctive relief.

On December 30, 1974, a complaint and a motion for a temporary restraining order were filed on behalf of the named plaintiffs. A hearing on that matter was held on January 2, 1975, and, by order dated January 6, 1975, the single district judge· issued a request that a three-judge court be convened under the provisions of 28 U.S.C. § 2284; he also exercised his power under 28 U.S.C. § 2284(3) to enter a temporary restraining order to preserve the status quo pending further action by the three-judge panel. On February 7, 1975, the single district judge, pursuant to 28 U.S. C. § 2284(5), ordered that the action proceed as a class action under the terms of Rule 23(b)(2), Federal Rules of Civil Procedure. On March 26, 1975 a hearing was held before this three-judge court and counsel for each party were allowed to present their respective positions as to the merits of the various contentions that have been raised.

After due consideration of the position of each party, we find that the distinctions created by the classifications of school children effected by statute at issue here and the policy of the Board of School Directors of the City of Milwaukee implement no legitimate state interest and are without rational bases in the context of this case. The members of the Board of School Directors for the City of Milwaukee are to be permanently enjoined from allowing a situation to exist whereby the parents of pupils at Hillel Academy are denied publicly-financed school bus service while such is provided to other Milwaukee residents whose children attend schools located within the city boundaries and who are otherwise similarly situated.

## I. THE ˯ QUESTIONED STATUTE

The people of Wisconsin, in their collective wisdom, have created a constitutional provision to insure that their government does not act to establish or infringe upon the free exercise of religion within the State:

> "Section 18. The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries." Article I, Sec. 18, Constitution of Wisconsin

The foregoing provision has frequently been the subject of litigation in the past as the courts applied it to the area of transportation of private or parochial students. Many such questions were laid to rest with the adoption by the voters of a constitutional amendment effective as of April, 1967:

> "Nothing in this constitution shall prohibit the legislature from providing for the safety and welfare of children by providing for the transportation of children to and from any parochial or private school or institution of learning."

Article I, Sec. 23, Constitution of Wisconsin

Pursuant to this authority, a statutory scheme has been created to allow for publicly-financed bus transportation of certain students attending private schools. The general rules in that regard are set forth in § 121.54 Wis.Stats. which provides in pertinent part as follows:

"Except as provided in sub. (1) or otherwise provided in this subsection, the school board of each district operating high school grades shall provide transportation to and from the school he attends for each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school grade at a private school located 2 miles or more from his residence, if such private school is a school within whose attendance area the pupil resides and is situated within the school district or not more than 5 miles beyond the boundaries of the school district measured along the usually traveled route."
§ 121.54(2)(b)(1), Wis.Stats.

The dictates of this statute are not absolute in nature however, for, by its very terms, § 121.54(2)(b)(1) is qualified by the provisions of § 121.54(1) Wis.Stats. It is this "city option" exception that is the subject of this litigation:

"City option. Subsections (2) and (6) and s. 121.57 do not apply to pupils who reside in cities unless the school they attend is located outside the city but within the boundaries of the school district. Where an annual or special meeting of a common school district or a union high school district, or the school board of a city school district or unified school district determines to provide transportation for such pupils, state aid shall be paid in accordance with s. 121.58 and there shall be reasonable uniformity in the transportation furnished such pupils whether they attend public or private schools."
§ 121.54(1), Wis.Stats.

Because the school district that services the City of Milwaukee is coterminous with the city boundary, the Board of School Directors for the City of Milwaukee is relieved of the duty of busing Milwaukee-resident pupils to schools located beyond the city limits by virtue of § 121.54(1) Wis.Stats., unless it should determine to do so in its discretion. A review of the transportation policy for Milwaukee public schools reveals that the Board of School Directors has utilized the "city option" statute in allocating school bus service because there is no provision therein for busing students other than to and from public and private schools located within the City of Milwaukee itself. (See part I of the current Transportation Policy of the Milwaukee Public Schools, dated April 4, 1973, attached hereto as Appendix A.)

By virtue of the foregoing, it has come to pass that the class of plaintiffs in this action, residents of the city of Milwaukee otherwise eligible for state financed school bus service under the standard imposed by the Wisconsin statutes and the city transportation policy, have been denied this service through the operation of the city option exception embodied in § 121.54(1) because the school to which bus service is sought is not within the city boundaries. The plaintiffs claim that both on its face and as implemented by the policy of the local Board of School Directors, § 121.54(1) Wis.Stats. operates to create an untenable distinction among school children so as to deny them equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution.

## II. THE LEGAL CONTENTIONS

### A. The Proper Standard of Review

At the outset it is necessary for this Court to determine the proper test by which this statute and policy are to be judged. Where, as here, social welfare legislation is subjected to attack under the equal protection clause of the four-

teenth amendment to the United States Constitution, the courts have traditionally utilized a two-tiered analysis whereby, unless fundamental personal freedoms are involved so as to require the state to establish the presence of a compelling interest, deference is given the legislative determinations so long as some rational basis therefor can be found.

"This, then, establishes the framework for our analysis. We must decide, first, whether [the statutory scheme at issue here] . . . operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny . . If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment."

*San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). *See too: Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).

The plaintiffs here do not contend that they are a part of a "suspect class," however they do claim that both the statute and the local transportation policy whereby it is implemented create classifications and distinctions which infringe upon certain fundamental rights such that it is necessary for this Court to perform a "maximum scrutiny" analysis: they urge that unless supported by some compelling state interest, neither the statute nor the local transportation policy can be upheld by this Court.

In the alternative, the plaintiffs allege that even if such maximum scrutiny is not appropriate in this case, this Court should refrain from utilizing the "rational basis" test that is generally imposed absent issues concerning fund-

amental freedoms; they claim that it is necessary to examine the legitimacy of these state policies in terms of a more graduated "sliding-scale" test whereby a statutory discrimination would be in violation of the equal protection clause of the fourteenth amendment despite some "marginal relation" to a legitimate state objective. *See, e. g., City of New York v. Richardson,* 2d Cir., 473 F.2d 923, cases cited at 930–931 (2d Cir., 1973), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973).

The defendants, on the other hand, maintain that no fundamental freedoms are at issue here, and that for this reason, no compelling state interests need be shown to support these classifications. They urge that so long as some rational basis supports these statutorily-imposed distinctions, the questioned state policies must be upheld.

Having reviewed the substance of these various contentions, we feel that we need not resolve this issue at this time. The Court finds that, even assuming, *arguendo,* that the defendants are correct in their assertions that a "minimum scrutiny" test is appropriate in this case, the statutory scheme at issue here and the transportation policy of the Board of School Directors of the City of Milwaukee create a classification that, as applied to these particular plaintiffs, is without rational basis. The Court is of the opinion that, as applied to the Milwaukee-resident parents of the pupils at Hillel Academy, these distinctions cannot prevail.

The Court is cognizant of the fact that recent decisions of both the United States Supreme Court and various federal district courts have begun to favor an approach to questions involving the Constitutional guarantee of equal protection of the law that is less rigid than the traditional two-tiered formula, *see, e. g., Timberlake v. Kenkel,* 369 F.Supp. 456, 464 (E.D.Wis., 1974) and *Women's Liberation Union of Rhode Island, Inc. et al. v. Israel,* 379 F.Supp. 44, cases cited at p. 49 (D.R.I., 1974); *see generally,* Gun-

ther, The Supreme Court 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L. Rev. 1 (1972). In addition, the Court would note that the plaintiffs' assertion that there exists a fundamental freedom ". . . to settle and live in any municipality . . . a concomitant right to the fundamental right of travel" (plaintiffs' brief in support of motion for summary judgment at p. 6) is a contention that admits of less than substantial support. *See, e. g., Wright v. City of Jackson, Mississippi,* 506 F.2d 900, 902 (5th Cir., 1975) [the fundamental right to travel is not meant to apply to intrastate travel and municipal employment residency requirements].

But despite the foregoing observations, this Court feels that it is not necessary to reach the question of whether some analysis other than the traditional "minimum scrutiny" test is to be applied here because we find that the facts of this case demonstrate that no rational basis whatsoever stands to support the classifications effected by this Wisconsin statute and the local transportation policy, as applied to these plaintiffs. The Court is of the opinion that even the most liberal resolution of this issue in favor of these defendants is insufficient to allow them to prevail on the merits of their claims.

### B. *The Alleged Rational Bases*

■ In support of their contentions that rational bases exist for both the questioned statute, § 121.54(1) Wis. Stats., and the Transportation Policy of the Board of School Directors for the City of Milwaukee, the defendants assert that various legitimate state goals are implemented by the classifications thereby created. Treating these allegations most liberally, and focusing upon the particular class of plaintiffs pressing this action, we find the distinctions created by § 121.54(1) Wis.Stats. and the local transportation policy to be without sufficient justification notwithstanding the defendants' assertions to the contrary.

Considering the three briefs that have been filed on behalf of the defendants, it is apparent that the principal justification for the classification by which these plaintiffs are denied state financed busing focuses upon the peculiar nature of the Milwaukee urban area. The essence of the defendants' claims is that because the population of the City of Milwaukee is so drastically in excess of the population of other Wisconsin municipalities and local governmental units, it is necessary to permit the state to enact laws which, by their own force or through local implementation, treat Milwaukee residents in a fashion different from other Wisconsin citizens. The defendants then cite a recent study performed by personnel from the University of Iowa which indicates that bus transportation service for Milwaukee-resident children is generally quite effective and efficient. Because the Milwaukee bus transportation policy was made more inclusive subsequent to that study, a rather conclusory allegation is made that a reasonable basis exists for the distinctions at issue here:

> "Therefore, the fact that the University of Iowa Study found the Board's August 3, 1971, bussing policy adequate and that the Board with this information in hand still chose to improve that bussing service indicates that the Board's policy is rationally related to the needs of City of Milwaukee students and does not create an arbitrary classification of those students."

Defendants' brief in support of motion for summary judgment, at p. 21.

The briefs filed on behalf of the defendants note, in addition, that pupils residing in the City of Milwaukee are provided with transportation service over an area far greater than many other students; they present factual evidence to establish that more funds are

**604**

expended for Milwaukee pupils than for many others, on a per capita basis:

> "It is therefore the position of the Board of School Directors of the City of Milwaukee that its transportation policy and the classifications created thereunder are definitely reasonable in nature because they are geared to the urban needs of Milwaukee students; and therefore those classifications are rationally related to the legitimate state purpose of providing student transportation to those Milwaukee students most in need of it."

Defendants' brief in support of motion for summary judgment, at p. 27.

While we would agree that the facts adduced by the defendants here tend to prove that students residing in the City of Milwaukee may indeed have what is generally an effective and efficient bus transportation system, the Court must find that this circumstance in no way provides a rationale as to why the particular Milwaukee residents that are the plaintiffs herein are denied the benefit of state-financed busing while their similarly-situated neighbors receive it. The argument outlined above simply proves too much, for, by its terms, the state would be permitted to carve out whatever distinctions it might desire— however arbitrary and unreasonable they may be—so long as the bus transportation system functions in a generally effective fashion.

This Court is unwilling to subscribe to such a broad argument; it must be held to be insufficient to support the distinctions that are present here.

The defendants contend that the statute under which the local transportation policy is promulgated, § 121.54(1) Wis.Stats., is constitutional on its face because it is rationally related to various fiscal considerations as well as to the practicalities of the urban environment in terms of alternative means of transportation (see the defendants' brief in support of motion for summary judgment, at pp. 13 through 15).

Yet even if we were to transpose these arguments into the context of the statute as applied to these members of the plaintiff-class, a rational basis for the distinctions created by the implementation of this transportation policy is still found wanting.

■ The Court notes that it is clear that in some circumstances, fiscal or monetary considerations may support distinctions made by the state as to social welfare programs it may wish to promulgate. *See, e. g., Geduldig v. Aiello, supra.* Under the facts of this case, however, the Court must conclude that no fiscal goals whatsoever are implemented by the manner in which the Board of School Directors of the City of Milwaukee has chosen to exercise the discretionary power conferred by the statute at issue here.

The affidavit of one Mordecai Levow, Executive Director of the Milwaukee Board of Jewish Education, establishes that of the 94 children of this class of plaintiffs, none resides at a distance greater than 7.7 miles from Hillel Academy; he states that, as an average, these students reside only 4.97 miles from the present location of the Academy.

Yet the deposition of Richard F. Wenzel, Director of Student Transportation for the Milwaukee Board of School Directors, illustrates the fact that the state finances busing for other similarly situated Milwaukee-resident students at distances far in excess of the distances at issue here: excluding the children of these plaintiffs, it appears that some 763 children who are enrolled in kindergarten or grades one through six are now bused to private and public schools located within the City of Milwaukee and that, of these, 50 children are bused a distance of between eight and 12 miles to and from their respective schools, while 10 are bused in excess of 12 miles each way.

In view of the foregoing facts, it seems difficult to conclude that the exclusion of these particular plaintiffs from the benefits of state-financed busing can be said to implement any fiscal or monetary goals. The record has established that the distance over which a student is bused bears a direct relationship to the cost that is to be assumed by the state (*see,* deposition of Richard F. Wenzel at p. 18); the state will not be heard to claim that the children of these plaintiffs have been denied state-financed busing for fiscal considerations when other similarly situated Milwaukee-resident pupils are provided with bus service at a cost in excess of that which would be required here.

Finally, we find that the record established no other facet of urban existence which would serve to justify the distinctions that are currently at issue; there is no showing, for example, that the children of these plaintiffs have access to alternative means of public transportation that is unavailable to other similarly situated Milwaukee resident pupils who receive bus service at this time.

The pleadings, memoranda, affidavits and other documents that comprise the record in this action reveal that, as a matter of uncontested fact, those residents of the City of Milwaukee that are within the class of plaintiffs in this action have been denied publicly-financed school bus service, that other similarly situated Milwaukee residents receive this service from the state, and that the sole basis for this distinction is the fact that the school in which the children of these plaintiffs are enrolled is located some 400 feet beyond the limits of the City of Milwaukee. Even when construed most liberally in favor of the defendants, the arguments that have been made are insufficient to support the particular classification that has been attacked by these plaintiffs. After due consideration, we must find this distinction to implement no legitimate state objective and to be without the rational basis necessary to withstand an attack under the provisions of the equal protection clause of the fourteenth amendment to the United States Constitution.

### C. *The Underlying State Statute*

The plaintiffs contend that the "city option" provisions of § 121.54(1) Wis. Stats. create distinctions in volation of their right to equal protection of law such that the statute is unconstitutional on its face. They urge that we find this law to be void and enjoin any and all further state action under its terms.

The defendants note that the Wisconsin Supreme Court has determined that this very statute and its most immediate predecessor—another "city option" scheme very similar to that embodied in § 121.54(1) as it now exists—are proper legislative enactments despite constitutional attacks comparable to those presented here. *See: Cartwright v. Sharpe,* 40 Wis.2d 494, 162 N.W.2d 5 (1968), and *Morrissette v. De Zonia,* 63 Wis.2d 429, 217 N.W.2d 377 (1974).

The defendants ask that we defer to the prior judgments of the Wisconsin Supreme Court that uphold the constitutionality of this law, and that we reject the plaintiffs' contentions to the contrary; they maintain that this legislative enactment is to be accorded wide discretion, and that it is to be given the benefit of every conceivable circumstance which might suffice to characterize these classifications as reasonable rather than arbitrary and invidious.

Despite the fact that counsel for each party has seen fit to devote much time and attention to the issues concerning the facial constitutionality of the underlying statute here, for the reasons that follow, this Court finds that it would be inappropriate to address this question at this time.

■ It has long been thought that, when dealing with questions of constitutional law, a court is to formulate a rule of constitutional law no broader than is required by the precise facts to which it is to be applied. Principles of judicial economy dictate that constitutional issues should not be decided in the absence of the necessity to do so, and even then, only on an adequate factual record. *See, e. g., Salandich v. Milwaukee County,* 351 F.Supp. 767, 770 (E.D.Wis., 1972), *citing Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) [Brandeis, J., concurring], *Liverpool, N. Y. and Philadelphia Steamship Co. v. Comm. of Integration,* 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899 (1885). *See too, Brenden v. Independent School District 742 et al.,* 342 F.Supp. 1224 (D.Minn., 1972), *aff'd,* 477 F.2d 1292 (8th Cir., 1973).

This Court has determined that, as applied in the context of this case, this statute and the Transportation Policy of the Milwaukee Public Schools operate to deny these plaintiffs equal protection of law; because this ruling serves to provide them with the essence of the relief they seek, we feel that the plaintiffs' contentions regarding the general constitutionality of § 121.54(1) need not now be resolved:

"In the present cases, we are not obliged to . . . pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford . . . for the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind

so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners . . ."

*Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). *See too, Brenden v. Independent School District 742 et al., supra,* 342 F.Supp. at p. 1230, *et seq.*

This Court will not proceed to issue a broad ruling directed to the facial validity of this statute at the present time.

### III. CONCLUSION

For the reasons set forth in the foregoing memorandum opinion, we find that § 121.54(1), Wis.Stats, and the current Transportation Policy of the Milwaukee Public Schools create distinctions that implement no legitimate state interest and are without rational bases as applied to these plaintiffs and the situation in which they find themselves. In view thereof,

It is hereby ordered that the motion for summary judgment that has been filed on behalf of the principal and intervening defendants is denied;

It is further ordered that the motion for summary judgment that has been filed on behalf of the plaintiffs is Granted to the extent that these defendants, their successors in office and all those acting in concert with them, are permanently enjoined from employing their discretionary powers to deny the benefits of publicly-financed school bus service to those parents who have children enrolled in kindergarten or grades one through six at Hillel Academy, and whose residence is in the City of Milwaukee at a point greater than two miles from the current location of the Academy; the plaintiffs' motion for summary judgment is denied in all other respects.

APPENDIX A

# milwaukee public schools

DIVISION OF ADMINISTRATIVE AND
PUPIL PERSONNEL SERVICES

April 4, 1973

### TRANSPORTATION POLICY OF THE MILWAUKEE PUBLIC SCHOOLS
(Carrier, in the following statement
is defined as a contracted vehicle.)

I. Transportation by carrier is provided to Milwaukee resident pupils as follows:

A. To and from public schools within the city—

1) If the pupil is enrolled in Kindergarten, or Grade 1 through Grade 6 and his residence is two miles or more from his district school;

2) If the pupil is enrolled in Grade 7 through Grade 12 and his residence is two miles or more from his district school and more than one mile walking distance from public transportation.

B. To and from private schools within the city—

1) If the pupil is enrolled in Kindergarten, or Grade 1 through Grade 6, and his residence is two miles or more from the private school;

2) If the pupil is enrolled in Grade 7 through Grade 12 and his residence is two miles or more from the private school and more than one mile walking distance from public transportation;

3) If the pupil resides within the designated "attendance area" of the private school. (Attendance area is the geographic area designated by the governing body of a private school as the area from which its pupils attend and approved by the Milwaukee Board of School Directors. The attendance areas of private schools affiliated with the same religious denomination may not overlap.);

4) If the private school submits the names, grade levels and location of eligible pupils; and

5) According to the transportation schedule prepared by the Division of Administrative and Pupil Personnel Services of the Milwaukee Public Schools.

II. When conditions of unusual hazard exist, transportation by carrier may be provided to Milwaukee resident pupils to and from the schools where they are enrolled as follows:

—for those pupils in grades K–6; and

—for those pupils in grades 7–12 where public transportation is not available.

A. A hazards review board composed of representatives from the Transportation Committee of the Milwaukee Public Schools, the Milwaukee Safety Commission, the Milwaukee Bureau of Traffic Engineers, the Milwaukee County Bureau of Traffic Engineers, and the Milwaukee Police Department will conduct investigations and prepare recommendations to be submitted to the Transportation Committee of the Milwaukee Public Schools.

B. Designated areas of unusual hazard shall be reviewed periodically by the hazards review board.

III. Transportation by carrier is provided to Milwaukee resident handicapped pupils to and from private and public schools as follows:

A. *Blind and Sight Saving*
—those pupils enrolled in the *elementary school program*:
—those pupils enrolled in the *secondary school program* who reside in areas where public transportation is not feasible; where public transportation is feasible, those pupils enrolled in the *secondary school program* will be provided bus checks.

B. *Crippled*—all children enrolled in the program.

C. *Deaf and Hard of Hearing*

—those pupils enrolled in the elementary school program;
—those pupils enrolled in the *secondary school program at John Marshall Jr.-Sr. High School* who reside south of the East-West Freeway; those pupils enrolled in the *secondary school program at St. John's School for the Deaf* who reside north of the East-West Freeway; those pupils who reside in areas where public transportation is not feasible; where public transportation is feasible, those pupils enrolled in the *secondary school program* will be provided bus checks.

D. *Learning Impairment*—those children enrolled in the program who are assigned to schools other than their district school.

E. *Educable Mentally Retarded*
—those pupils enrolled in the *elementary school program* who are assigned to schools other than their district school;
—those pupils enrolled in the *secondary school program* assigned to schools other than their district school where public transportation is not feasible; where public transportation is feasible, the *secondary school program* pupils who are assigned to schools other than their district school will be provided bus checks.

F. Trainable—all children enrolled in the program.

IV. Transportation by carrier is provided to Milwaukee resident pupils enrolled in the Milwaukee Public Schools when it becomes necessary to modernize a school facility, to accommodate temporary enrollment overloads, or when the district school facility will not accommodate the pupils who reside in the district.

   A. It is the policy of the Board of School Directors to reduce and to eliminate bussing due to enrollment overload at the earliest possible date.

   B. Where such bussing is necessary and where students will remain in the receiving school for an entire year, they shall be mixed in with the other students in the receiving school rather than grouped intact in separate classes.

V. Transportation by carrier or adult ticket fare is provided for Milwaukee Public School Interscholastic Athletics as follows:

   A. For those sports approved by the WIAA and actually included in the athletic program of the high school.

   | WIAA Approved Sports | |
   | --- | --- |
   | Baseball | Gymnastics |
   | Basketball | Swimming |
   | Cross Country | Tennis |
   | Football | Track |
   | Golf | Wrestling |

   B. From the high school to the practice site and return.

   C. From the high school to the meet site and return.

   D. From the high school to approved meets no more than 16 * miles from the participating high school.

   E. For those high schools participating in recognized WIAA state events.

   F. From the high school to the meet site and return for high school bands to perform at scheduled football games.

   G. It may be necessary for coaches to provide transportation in privately-owned automobiles for small groups of athletic team members. Reimbursement will be based on the automobile allowance rate adopted by the Milwaukee Board of School Directors. (Board Proceedings 1963–64, p. 261) Liability insurance will be based on the "Liability Insurance Covering Employees' Personal Automobiles While Being Used on Board Business" as printed in Business Department Bulletin No. 9 (1966–67), January 31, 1967.

VI. Transportation may be provided for Milwaukee resident pupils enrolled in Milwaukee Public Schools rehabilitative programs as follows:

   A. By carrier, or

   B. By pass (school, single fare, or zone fare).

* The actual distance between the two farthest Milwaukee Public High Schools.

VII. Transportation by carrier for field trip experiences will be arranged by the (respective) school involved. Schools may receive financial aid for indigent pupils.

VIII. All Proposals which will include transportation services will be written in order to conform with the adopted transportation policy of the Milwaukee Board of School Directors.

IX. This policy shall be administered by the Director—Student Transportation.

X. Transportation may be provided for Milwaukee resident pupils enrolled in the Interrelated Language Skills program as follows:

   A. By carrier, or

   B. By school pass.

XI. Transportation will be provided as necessary to implement the Milwaukee Public Schools' secondary intramural and extramural physical education program. Transportation will be provided for activities such as sports days, modified sports days, play days, symposiums, and clinics. Participation in these activities must be approved by the Curriculum Specialist—Health and Physical Education.