Richard A. FINKEL, Minor, by Parent
Leonard Finkel, Plaintiff,

v.

NEW YORK CITY BOARD OF EDUCA-
TION and Robert Christen,
President, Defendants.

No. 76 C 1584.

United States District Court,
E. D. New York.

Aug. 13, 1979.

Leonard Finkel, pro se.

Allen G. Schwartz, Corp. Counsel, New York City by Joseph F. Bruno, New York City, Mary C. Tucker, Brooklyn, N. Y., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This civil rights action is now before the court on defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (6), F.R.Civ.P. Plaintiff seeks relief under 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution of the United States, alleging that New York Education Law § 3635, subd. (1) is unconstitutional on its face and as applied by defendants in that it violates plaintiff's civil rights, presumably to equal protection of the laws, by discontinuing school bus transportation for plaintiff's child and others similarly situated. The complaint demands declaratory, injunctive and equitable relief, and $500,000 in damages. Plaintiff's request for a preliminary injunction was denied by order dated September 8, 1976.

The facts alleged in the complaint, and assumed true on this motion to dismiss, *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), reveal the following. Plaintiff is the father and guardian of Richard Finkel, age eight; both are residents of Richmond County in this district. Plaintiff's child attends a Jewish parochial school located in Kings County, New York, also in this district. The distance between his home and school is approximately seven miles. This institution is the denominational school closest to his residence deemed acceptable to plaintiff. Until the school year commencing in September 1976, the defendant New York City Board of Education ("Board") had provided transportation for plaintiff's child and all those similarly situated between their residences and parochial schools. In September 1976, however, a new policy was instituted which provided transportation only for school children who lived five miles or less from, and in the same borough as, their school.[1] Because plaintiff's child satisfies neither condition, his transportation was terminated. In its place, plaintiff's child and all those similarly situated received free passes for public transit lines. This new policy was instituted allegedly due to budgetary considerations.

The Board based the change on § 3635, subd. 1, of the New York Education Law, which provides that:

1. Sufficient transportation facilities (including the operation and maintenance of motor vehicles) shall be provided by the school district for all the children residing within the school district to and from the school they legally attend, who are in need of such transportation because of the remoteness of the school to the child or for the promotion of the best interest of such children. Such transportation shall be provided for all children attending grades kindergarten through

---

1. Exceptions to the policy are made for: (a) handicapped children bused pursuant to Education Law of the State of New York § 4402(4); (b) open-enrollment children bused so as to promote integration; (c) children bused to relieve overcrowding in schools; and (d) the Jewish Foundation and Bais Yakhov schools of Staten Island, which have limited mileage variances.

eight who live more than two miles from the school which they legally attend and for all children attending grades nine through twelve who live more than three miles from the school which they legally attend and shall be provided for each such child up to a distance of fifteen miles, the distances in each case being measured by the nearest available route from home to school. The cost of providing such transportation, between two or three miles, as the case may be, and fifteen miles shall be considered for the purposes of this chapter to be a charge upon the district and an ordinary contingent expense of the district. Transportation for a lesser distance than two miles in the case of children attending grades kindergarten through eight or three miles in the case of children attending grades nine through twelve and for a greater distance than fifteen miles may be provided by the district, and if provided, shall be offered equally to all children in like circumstances residing in the district. *The foregoing provisions of this subdivision shall not require transportation to be provided for children residing within a city school district, but if provided by such district pursuant to other provisions of this chapter, such transportation shall be offered equally to all such children in like circumstances.* Nothing contained in this subdivision, however, shall be deemed to require a school district to furnish transportation to a child directly to or from his home. (Emphasis added).

Plaintiff concedes that the City of New York, composed of its five boroughs, is one city school district for purposes of § 3635. Amended Complaint at 5. Thus, under the statute, the Board is under no obligation to provide transportation for plaintiff's child, but if it extends bus service to any, such transportation must be offered equally to all children "in like circumstances."

Plaintiff alleges that § 3635 violates the Equal Protection Clause of the Constitution in thát it establishes mandatory transportation for students living in a non-city school district and attending school in another, while students living in the city school dis-

trict in which they attend school must rely on the Board's discretion in providing transportation. The Board's policy under § 3635, moreover, is alleged to violate plaintiff's civil rights by discriminating against children who live in excess of five miles from, or who live in a different borough than, their school.

Plaintiffs' claim of facial unconstitutionality can be dismissed in short order. In *O'Donnell, et al. v. Antin,* 81 Misc.2d 849, 369 N.Y.S.2d 895 (Sup.Ct.West.Co.1974), *aff'd,* 36 N.Y.2d 941, 373 N.Y.S.2d 549, 335 N.E.2d 854, *appeal dismissed for want of substantial federal question,* 423 U.S. 919, 96 S.Ct. 258, 46 L.Ed.2d 245 (1975), parents of parochial school children brought suit to declare § 3635 unconstitutional upon its face for the precise reasons forwarded by plaintiff in this action. The lower court held that there was no equal protection violation and that § 3635 was constitutional. The Court of Appeals affirmed substantially on the lower court's reasoning, and the Supreme Court dismissed the appeal for lack of a substantial federal question.

In these circumstances, the Supreme Court's summary dismissal in *O'Donnell* renders its holding binding on this court; in fact, it would be error to disregard the *O'Donnell* decision. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In *Hicks,* the Court found error in a district court's decision to disregard a Supreme Court decision which

"was an appeal from a decision by a state court upholding a state statute against federal constitutional attack. A federal constitutional issue was properly presented, it was within our appellate jurisdiction under 28 U.S.C. § 1257(2), and we had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought here under our certiorari jurisdiction. We are not obligated to grant the case plenary consideration, and we did not; but we were required to deal with its merits. We did so by concluding that the appeal should be dismissed because the constitu-

tional challenge to the California statute was not a substantial one. The three-judge court was not free to disregard this pronouncement. As Mr. Justice Brennan once observed, '[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of the case . . . ,' *Ohio ex rel. Eaton v. Price,* 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 . . . (1959) . . . ." 422 U.S. at 344–45, 95 S.Ct. at 2289.

See also *Port Authority Bondholders Protective Committee v. Port of New York Authority,* 387 F.2d 259, 263 n. 3 (2d Cir. 1967); 7B Moore's Federal Practice § 1257, JC–372 (2d Ed. 1979). Thus, since plaintiff's challenge to the facial constitutionality of § 3635 has already been decided against his position, such a claim must be dismissed for failure to state a claim upon which relief can be granted.

■ Plaintiff's attack on the Board's imposition of limitations on city bus service must also fail. Plaintiff does not allege that the classification created is the result of any type of antipathy or invidious discrimination toward him, *Vance v. Bradley,* 440 U.S. 93, 98, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979), or that any fundamental right is at stake, see, e. g., *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, *reh. den.,* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In these circumstances, if the law is basically valid, "it is presumed that 'even improvident decisions will eventually be rectified by the democratic process . . . .' " *Personnel Adm'r of Massachusetts v. Feeney,* —— U.S. ——, ——, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979), *citing Vance v. Bradley, supra.*

■ Since the equal Protection Clause of the Constitution does not deprive the States of all power of classification, *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and "[m]ost laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law," *Personnel Adm'r of Massachusetts v. Feeney, supra,* —— U.S. at ——, 99 S.Ct. at 2292, a court's function in assessing an equal protection claim such as plaintiff's is limited. The primary responsibility for determining the manner in which a particular law will affect society is upon the legislative branch and not the judiciary. *Id., citing Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *San Antonio Independent School District v. Rodriguez, supra.* The Court must merely decide whether the challenged statute rationally furthers a legitimate State purpose or interest. *Massachusetts Bd. of Retirement v. Murgia, supra,* 427 U.S. at 312, 96 S.Ct. 2562; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), see also *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). Applying this standard, it is evident the Board's limitations on bus service pass constitutional muster.

■ Under section 3635, the Board is not obligated to provide transportation to any city school children. If it chooses to extend transportation to some children, however, it must provide similar service to all children in "like circumstances." While the five-mile limitation is perhaps randomly chosen, although this is not clear from the record, it is certainly not arbitrary in the sense of singling plaintiff out for special treatment. Simply stated, the Board could, consistent with the dictates of equal protection, limit service based on financial considerations even though the limitation results in some inequality. See *Dandridge v. Williams, supra,* 397 U.S. at 485, 90 S.Ct. 1153; *Hughes v. Alexandria Scrap Corp., supra,* 426 U.S. at 814, 96 S.Ct. 2488. See also *New York City Transit Authority v. Beazer, supra.*

■ Such a limitation is clearly designed to effect a savings of resources. A classification which has a reasonable basis does not offend the Fourteenth Amendment's equal protection clause because it imperfectly effectuates the State's goals or because in

practice it results in some inequality. See *San Antonio School District v. Rodriguez, supra*; *Lindsley v. National Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). While plaintiff would prefer that the line be drawn to include his child, the Board in its discretion has exercised its power in a fashion that results in no service for plaintiff and those in his position. Although the Board's offer to provide free or reduced public transportation passes might not fully satisfy plaintiff, it does suggest the Board's desire to minimize the effect of its policy and does caution against substitution of this court's judgment for that of public officials charged with allocation of scarce funds.

■ While the court need not reach the question of the rationality of the intra-borough limitation, having found the five-mile limitation valid, see *Ashwander v. T.V.A.,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring at 345–46, 56 S.Ct. at 482), the borough limitation is also rationally related to legitimate budgetary considerations and thus withstands attack. Administrative costs and the savings involved in shorter routes amply demonstrate the rationality of the plan.[2]

■ A State may allocate its funds available for school bus transportation in any manner it sees fit, or may cut off funds entirely, so long as the allocation of resources does not capriciously favor one group over another. *Sparrow v. Gill,* 304 F.Supp. 86 (M.D.N.C.1969). Since plaintiff has failed to demonstrate a classification violative of the principles set forth above, the complaint fails to state a claim upon

which relief can be granted and must be dismissed.

SO ORDERED.

2. *Deutsch v. Teel,* 400 F.Supp. 598 (E.D.Wis. 1975) (three-judge court), relied on by plaintiff, is readily distinguishable. There the court held that a school board's decision not to provide bus transportation beyond the city limits and boundary of the school district, due to financial considerations, was not rationally related to a legitimate State interest where plaintiffs' school was located merely 400 feet beyond the limit. The court noted that of the 94 members of the plaintiff class none resided more than 7.7 miles from the school and the class residences averaged less than 5 miles from school. In contrast, 10 students whose schools were with-

in the city limits were bused in excess of 12 miles to school, and 50 students were bused between 8 and 12 miles to school. The board's fiscal argument was significantly undercut since it actually cost more to bus these students within the city limits than to bus the plaintiffs.

Here, however, it is apparent that financial considerations are real and that savings would indeed be realized from the limitations. The five-mile limitation, moreover, insures that no student would be bused further than plaintiff, who lives approximately seven miles from his school, unlike the case in *Deutsch.*