**BUFFALO TEACHERS FEDERATION, INC., Plaintiff,**

v.

**Robert D. HELSBY, Joseph R. Crowley and Ida Klaus, as Members of the New York State Public Employment Relations Board, Defendants.**

No. 76 Civ. 4875.

United States District Court, S. D. New York.

July 29, 1977.

Paul E. Klein, Albany, N.Y., for plaintiff; Deborah A. Watarz, Mineola, N.Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Eileen F. Shapiro, New York City, of counsel.

FRANKEL, District Judge.

Plaintiff, the Buffalo Teachers Federation, sues under 42 U.S.C. § 1983 for declaratory and injunctive relief against the three members of the New York State Public Employment Relations Board ("PERB"). The gravamen of plaintiff's complaint is that the State's Taylor Law, which prohibits public employees from striking and mandates sanctions for violations of this prohi-

bition, unconstitutionally discriminates with regard to the revocation of dues check-off privileges as a sanction for a prohibited strike between public employee unions operating in local jurisdictions which have adopted their own labor regulations and those unions which operate in localities not having such regulations. The plaintiff is currently involved in a proceeding before PERB in which the challenged dues revocation procedure seems destined to be invoked.[1] The court is asked to enjoin the PERB proceeding pending resolution of plaintiff's constitutional challenge. Defendants resist the motion for preliminary relief and move for dismissal of the complaint.[2] The court concludes that plaintiff's motion should be granted.

### I.

The Public Employees' Fair Employment Act (the Taylor Law), N.Y.Civ.Serv. Law § 200 *et seq.*, was enacted in 1967. It gives public employees the right to organize and to negotiate terms and conditions of employment with the State, local governments, and other political subdivisions. Section 208.1(b) of the Act entitles duly recognized or certified employee organizations to have membership dues regularly deducted from members' paychecks. PERB was established to handle various administrative responsibilities involved in implementing the statute and to resolve disputes among the various parties governed by it. The Act also provides, in § 212, that any local government entity which adopts provisions and procedures governing labor relations with its employees "substantially equivalent" to those contained in the statute shall be exempted from a number of the general requirements and provisions. In these localities, "mini-PERBS," as they are called, have been established to implement the Act in much the same fashion as does the State PERB with regard to the entities which remain subject to its jurisdiction.

A central feature of the Act is its prohibition in § 210.1 against strikes by public employees or public employee organizations. Governmental units confronted with an actual or potential work stoppage in violation of this provision are required by § 211 to apply to the Supreme Court for injunctive relief. In the event that such an injunction is disobeyed, the statute mandates further application to the Supreme Court for an order of criminal contempt under §§ 750–751 of the Judiciary Law.

In addition to the contempt sanction, the Act contemplates specific penalties against striking employees and employee organizations. Employee organizations which have violated the no-strike requirement are disciplined in one of two ways, depending on whether or not they operate within the jurisdiction of a local governmental unit which has assumed responsibility for labor relations with its employees pursuant to § 212 of the Act. Employee organizations not functioning in such governmental units are subject to the jurisdiction of the State PERB. That Board is required by § 210.-3(f) of the Act to withdraw the dues check-off privilege of any organization which it finds, after a hearing, to have engaged in a work stoppage in contravention of the statutory ban. The Board's action is independent of the judicial enforcement mechanism provided in § 211.

The gist of plaintiff's suit is the contrasting procedure applicable to a striking employee organization not under the State

---

1. A charge was filed with PERB on October 29, 1976, alleging a violation by plaintiff of § 210.1 of the Taylor Law. Proceedings before the Board on the charge were informally stayed pending resolution of defendants' motion of November 10, 1976, challenging the appropriateness of venue in this district. Although that motion was decided on December 23, 1976, PERB has not, so far as the court can determine, taken any further action on the charge outstanding against the plaintiff.

2. Defendants' motion asserts that the complaint fails to state a cause of action and that the court lacks subject matter jurisdiction. Little if any argument or authority was offered in support of these alleged bases for dismissal; in any event, the court finds them to be insubstantial.

PERB's jurisdiction. The authority to withdraw the dues check-off privilege from such an organization is vested in the first instance in the State courts. Section 751.2 of the Judiciary Law governing criminal contempt provides in relevant part:

"In the case of a government exempt from certain provisions of article fourteen of the civil service law, pursuant to section two hundred twelve of such law, the court may, as an additional punishment for such contempt, order forfeiture of the rights granted pursuant to the provisions of paragraph (b) of subdivision one of section two hundred eight of such law [the right to membership dues check-off]."

Thus, if a criminal contempt proceeding is initiated, the court "may," but unlike the State PERB is not required to, impose a dues check-off forfeiture. In the event that no contempt proceeding is brought, the local mini-PERB is charged with responsibility for disciplining the offending employee organization in a fashion "substantially equivalent" to that provided in § 210.3 of the Act. See Rules and Regulations of the Department of Civil Service, Chap. VII, § 203.7.

The plaintiff challenges this dual mechanism for withdrawing dues check-off privileges on the ground that it discriminates arbitrarily and unconstitutionally against those organizations which are under the jurisdiction of the State PERB.

## II.

As their principal contention, defendants say the court should abstain from adjudicating plaintiff's constitutional claims on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its now rather numerous progeny, e. g., *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* —— U.S. ——, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Defendants concede that the Supreme Court has not directly held *Younger* applicable to administrative proceedings, but cf. *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971); *Gibson v. Berryhill, supra,* but they rely on several recent Second Circuit cases which seem to have made this further extension of the doctrine. See *McCune v. Frank,* 521 F.2d 1152, 1158 (2d Cir. 1975) (police disciplinary proceedings); *Anonymous v. Association of the Bar,* 515 F.2d 427 (2d Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (bar disciplinary proceedings). Cf. *Friedman v. Beame et al.,* 558 F.2d 1107 (2d Cir. 1977). Accepting this scope for the *Younger* principle, the court nevertheless concludes that abstention is neither required nor appropriate in the context of this case.

An essential predicate for *Younger* abstention is the availability of a competent state tribunal to decide the federal issues involved. See, e. g., *Younger v. Harris, supra,* 401 U.S. at 49, 91 S.Ct. 746; *Gibson v. Berryhill, supra,* 411 U.S. at 577, 93 S.Ct. 1689; *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 608-09, 95 S.Ct. 1200; *Juidice v. Vail, supra,* 430 U.S. 327, at 337, 97 S.Ct. 1211; *Trainor v. Hernandez, supra,* —— U.S. at ——-——, 97 S.Ct. 1911. The core notion of comity, see, e. g., *Juidice v. Vail, supra,* 430 U.S. at 334-335, 97 S.Ct. 1211, is only implicated in the situation where the constitutional claim raised in federal court is one which could be fully and fairly considered in the pending state proceeding. Federal interference in such a situation may result "in duplicative legal proceedings and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 604, 95 S.Ct. at 1208, quoting *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In cases where the state tribunal is for some reason incompetent or unable to resolve the federal claims presented, the Supreme Court has found abstention not to be required. See, e. g., *Gibson v. Berryhill, supra; Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Cf.

*Trainor v. Hernandez, supra,* —— U.S. at —— n. 10, 97 S.Ct. 1911.

In *Gibson v. Berryhill, supra,* a case in material respects analogous to the one at bar, a charge had been filed with the Alabama Board of Optometry alleging that several optometrists in the employ of Lee Optical Company were violating the ethics of their profession. The Board, composed entirely of optometrists in private practice, was urged to revoke the licenses of the accused individuals. 411 U.S. at 567–68, 93 S.Ct. 1689. Prior to the commencement of a hearing before the Board, these optometrists brought suit in federal court under § 1983 seeking to enjoin the scheduled state proceedings on the ground that the Optometry Board was "biased and could not provide the plaintiffs with a fair and impartial hearing in conformity with due process of law." *Id.* at 569–70, 93 S.Ct. at 1693. A three-judge court, rejecting the suggestion that *Younger* required deference to the pending state proceeding, granted plaintiffs the relief requested. *Berryhill v. Gibson,* 331 F.Supp. 122 (M.D.Ala.N.D. 1971). The Supreme Court accepted the lower court's decision on the abstention question, noting specifically that *Younger* abstention was inappropriate because the State Board of Optometry was "incompetent by reason of bias to adjudicate the issues pending before it." 411 U.S. at 577, 93 S.Ct. at 1697. The Court went on to note that the availability of judicial review, "*de novo* or otherwise," at the conclusion of the administrative proceeding did not alter its conclusion on the abstention question because an initial adverse determination by the Board would cause irreparable injury to the plaintiffs regardless of the possibility of vindication on appeal. *Id.* at 577 and n. 16, 93 S.Ct. 1689.

Defendants concede that PERB cannot consider the constitutional question which the plaintiff seeks to have this court adjudicate. The Board itself has come to the same conclusion. See *In the Matter of the United Federation of Teachers, Local 2,* 9 PERB, ¶ 3079 at p. 3141 (1976). PERB's inability to hear plaintiff's claim does not result from any infirmity in the Board's composition; nevertheless, for purposes of the abstention doctrine, this limitation on PERB's authority has the same practical impact as did the incompetence of the Board of Optometry in *Gibson.* In both cases, the plaintiffs are denied "the opportunity to fairly pursue their constitutional claims in the ongoing state proceedings \* \* \*." *Juidice v. Vail, supra,* 430 U.S. at 337, 97 S.Ct. at 1218.

Further, again recalling the situation in *Gibson,* the availability of judicial review will not cure the infirmity in the proceeding before PERB. While § 213 of the Taylor Law does contemplate review of PERB's initial determination under Article 78 of the Civil Practice Law, the delay in considering the constitutional challenge until after PERB's initial determination of liability would irreparably harm the plaintiff.[3] In the time between PERB's initial determination and final review in the state courts, likely a period of at least several months, the union would be denied its dues check-off privilege. As PERB has noted, the withdrawal of the check-off promptly imposes a severe financial hardship on a union because of additional expenses resulting from voluntary dues collection efforts as well as the almost certain reduction in dues actually collected. The problem is aggravated in the case of a union, like the plaintiff here, which represents employees who do not work in a common plant or location. See *In the Matter of United Federation of*

---

3. Plaintiff's ability to raise its constitutional claim in the judicial review proceedings is also problematic under New York law. In *Kovarsky v. Housing Development Administration,* 31 N.Y.2d 184, 335 N.Y.S.2d 383, 387–88, 286 N.E.2d 882 (1972), the Court of Appeals said that "a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments." The fact that a court is permitted to treat an Article 78 proceeding as an action for declaratory relief in order to reach constitutional questions improperly raised therein, *id.* 335 N.Y.S.2d at 388, 286 N.E.2d at 885, suggests the possible availability of a competent forum to hear plaintiff's claim, but leaves further questions about the certainty and utility of the review proceeding.

*Teachers, Local 2,* 9 PERB ¶ 3071 at pp. 3128–30 (1976). Even if the check-off privilege were ultimately restored by the state courts, plaintiff would be unable to recoup either the expenses for dues collection incurred in the interim or the revenue lost because of the unwillingness of union members to tender their weekly dues voluntarily.

The court finds these prospects of irreparable injury, coupled with the undisputed inability of PERB to resolve plaintiff's federal claim, compelling arguments against abstention.

### III.

■ Reasons similar to those just canvassed result in rejection of defendants' related contention that the plaintiff should be required to exhaust state administrative remedies before bringing this § 1983 action. In this Circuit, the operative rule is that state administrative remedies must be exhausted if they are adequate and their pursuit would not be futile. See *Cordova v. Reed,* 521 F.2d 621, 624 (2d Cir. 1975); *Fuentes v. Roher,* 519 F.2d 379, 386 (2d Cir. 1975); *Plano v. Baker,* 504 F.2d 595, 597 (2d Cir. 1974); *Eisen v. Eastman,* 421 F.2d 560, 567–69 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). The administrative remedies available to the plaintiff do not satisfy these requirements.

Without exploring its logical and legal difficulties, defendants' argument that PERB might rule favorably to plaintiff seems to lack factual substance. PERB has charged the plaintiff with engaging in a 13-day work stoppage which resulted in the unauthorized daily absence of between 2919 and 3064 teachers. In its submissions to this court, the plaintiff has admitted its responsibility for calling the strike, thereby insuring that it will be found to have violated the no-strike ban of the Act in any proceeding before PERB. See § 210.3(e). In such circumstances, the revocation of the dues check-off is required by § 210.3(f) of the Act.[4]

### IV.

■ We come, then, to the merits of plaintiff's claim that the provisions of the Taylor Law and the Judiciary Law governing the revocation of the dues check-off privilege contravene the Equal Protection Clause of the Fourteenth Amendment. Plaintiff urges that the court should "strictly scrutinize" the disputed provisions on the ground that they impermissibly trench on the fundamental rights of union members to "form, join and participate in the activities" of the union. Cf. *Police Department of Chicago v. Moseley,* 408 U.S. 92, 101, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Defendants recommend a "far more relaxed standard" which requires only a rational relationship

---

**4.** Defendants' various attempts to demonstrate the possibility of a favorable determination by PERB will not withstand close scrutiny. The defendants focus on PERB's past record, which indicates that "of 169 strikes by public employee organizations subject to PERB jurisdiction, only 108 cases resulted in an order suspending the dues check-off privilege." However, out of the total of 169 strikes, only 112 resulted in formal proceedings before PERB, and in 108 of these, the check-off was revoked by the Board. See *In the Matter of United Federation of Teachers, Local 2,* 9 PERB ¶ 3071 at p. 3129 n. 2 (1976). Thus, unions in circumstances comparable to those facing the plaintiff have had their dues check-off privileges revoked in approximately 96% of the proceedings before PERB. Moreover, it appears, if not with absolute certainty, that the remaining 4% (4 cases) involved "strikes" so trivial or unintentional in

character that PERB could fairly find, and evidently did, no genuine violation at all.

Other than the ineffectual statistics, defendants have provided the court with no specific evidence to warrant the supposition that the strike in which plaintiff engaged will not be found by PERB to have violated § 210.1 of the Act and that the check-off privilege will not be revoked. Passing reference is made to § 210.3(e) of the Act, which, defendants contend, allows PERB discretion to consider various mitigating circumstances in determining whether to order forfeiture of the dues check-off. The court finds no such provision in the cited section of the Act; the following section, § 210.3(f), does allow mitigating circumstances to be considered in "fixing the duration of the forfeiture," but not in making the threshold determination of whether any forfeiture is to be required.

between the challenged classification and a legitimate state purpose. Cf. *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The court agrees with defendants as to the standard,[5] but finds the discriminatory scheme indefensible even on that minimal basis.

As defendants urge, the questioned provisions pass muster if the disputed classification bears a rational relation to a legitimate state interest. See, e. g., *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–15, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). However, the State's divergent mechanisms for revoking the check-off—mandatory against some unions and permissive for others, depending solely on accidents of geography—does not satisfy this relatively lenient test.

The difficulty begins with § 212 of the Taylor Law, which allows localities to adopt their own collective bargaining laws and thereby to gain an exemption from a number of the other requirements of the statute. This section was included, the defend-ants maintain, to encourage localities to take responsibility for their own labor management relations. It was based on the recognition that "local political units are often in the best position to understand and deal with the problems affecting their employees" and should be given "flexibility in devising local solutions to matters of employee representation and collective negotiation." N.Y. State Legislative Annual, 273–74 (1967) (memorandum of Governor Rockefeller issued upon approval of the legislation).

In addition, defendants tell us, the statutory scheme reflects a perception that mini-PERBS established in the self-regulating political units "might lack the necessary impartiality" to administer the Act fairly, especially with regard to the imposition of sanctions on unions violating the no-strike provision in § 210.3.[6] Consequently, the power to suspend the dues check-off privilege was vested in the courts rather than in the mini-PERBS. See N.Y. Judiciary Law § 751.2. And this means, as is undisputed, that suspension is discretionary, not mandatory, for these fortunate unions, and is in fact rarely, if ever, ordered.

Taking the proffered justification at face value,[7] the court is unable to conclude that

5. The discrimination in question does not impair directly the rights of teachers in New York voluntarily and freely to organize and to participate in union affairs; its effect is only on the ability of the union to collect dues from its members in the most convenient and efficacious fashion. Even if the dues check-off privilege is revoked, members are still free to tender their dues to the union, and the union's status as representative of the workers is left unimpaired. See §§ 208.1(a) and 210.3(f). Cf. *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 806–08, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The substantive interest is, in short, in the area of economic affairs where a "rational basis" suffices to sustain the legislation. See *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

6. The possible lack of impartiality was one factor leading the Select Joint Legislative Committee on Public Employee Relations to recommend in its 1969 Report the abolition of the mini-PERBS.

"Mini-PERBS must also be totally neutral. In order to maintain the confidence not only of the public but also of the public employees, the mini-PERB must avoid the appearance of alliance with the employer. Most mini-PERBS are advised and represented by the government attorney. Their offices are housed in the City Hall or County office building and they share an office staff with the chief executive officer or a department head. Further, mini-PERBS are rarely provided with a separate budget, relying instead, upon the largess of the executive or the legislative body on an *ad hoc* basis. Such factors could lead one to question whether such boards are in substantial compliance with the spirit of the Taylor Law. The staff feels that mini-PERBS no longer serve a useful purpose and should be abolished."
1969 Report of the Select Joint Legislative Committee on Public Employee Relations at 26.

7. Under the statutory scheme, the courts have authority to order forfeiture of the dues check-off privilege only if a union is found in contempt of a court order in a proceeding initiated

it "adequately justif[ies] the salient features," *Craig v. Boren,* 429 U.S. 190, 202–03, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), of the Taylor Law and the Judiciary Law in dispute here. If plaintiff's only objection were to the existence of different tribunals, in one case the courts and in the other PERB, to determine the appropriateness of the suspension of the dues check-off privilege, the questioned law might well survive. The attack, however, is not upon the dual enforcement mechanism *per se* ; instead, plaintiff objects to the different standards which the courts and PERB are authorized, indeed required, to apply in deciding whether the dues check-off privilege should be suspended. Section 210.3(f) of the Act mandates that PERB, after making a finding that a union has violated the no-strike provision in § 210.1, *shall* suspend the dues check-off privilege; the Board has discretion with regard to the duration of the suspension but not on the question of suspension *vel non.* In contrast, § 752.2 of the Judiciary Act provides that in the case of a union found to be in contempt, "the court *may,* as an additional punishment for such contempt," order forfeiture of the dues check-off privilege (emphasis added). As PERB itself has noted, these different statutory standards have yielded significant disparities in treatment.

"[T]he administrative machinery provided by the Law does not insure a standard of evenhandedness in the imposition of the statutory penalty of forfeiture of dues deduction privileges. This Board lacks jurisdiction to deal with strikes involving public employees of mayoral agencies of the City of New York, and of the other 13 local governments which currently have a mini-PERB (CSL § 212). Public employee organizations that strike against such agencies may have their dues deduction privileges suspended only by a court, and then only as punishment for contempt of the court's order. Eighteen strikes by such employee organizations have occurred since the advent of the Taylor Law, and in no case has there been any suspension of the dues deduction privileges of the striking employee organization. By contrast, there have been 135 charges filed against employee organizations deemed responsible for strikes that were subject to the jurisdiction of this Board. * * * This Board has ordered the suspension of dues check-off privileges in 108 cases, found no penalty warranted in 4, and dismissed or authorized withdrawal of such charges in 19 cases. The remaining cases are pending."

*In the Matter of United Federation of Teachers, Local 2,* 9 PERB ¶ 3071 at p. 3129 n. 2 (1976).

■ In their various submissions, the defendants have provided no pertinent rationale warranting the severe disadvantage thus effected for unions like the plaintiff. They have demonstrated neither a rational basis for treating the two groups of unions unequally nor any legislative purpose which could conceivably be furthered by such treatment. The only difference between the unions subject to PERB's jurisdiction and those within the province of the courts is the accident of whether they operate under a governmental unit which has opted for local control under § 212 of the Act. The difference is utterly fortuitous, and cannot justify in any remotely rational sense the result that the unions finding themselves willy nilly under PERB's control suffer more severe punishment for engaging in prohibited work stoppages than do those unions under local control. Like the voters in *Gray v. Sanders,* 372 U.S. 368, 83

pursuant to § 211 of the Act. In other cases, the mini-PERBS are charged with responsibility for imposing sanctions, including withdrawal of the dues check-off privilege, on the offending employee organization in a manner "substantially equivalent" to that provided in § 210.3 of the Act. See Rules and Regulations of the Department of Civil Service, Chapter VII, § 203.7. See also A Guide to the Preparation of

Local Enactments Pursuant to Section 212 of the Civil Service Act at 11–12 (Feb. 21, 1968). Thus, in a strict sense, defendants' tendered justification is overbroad. If taken literally and carried to its proper conclusion, the desire for impartiality would require complete court control over the imposition of sanctions on organizations violating the no-strike ban whether or not contempt proceedings were instituted.

S.Ct. 801, 9 L.Ed.2d 821 (1963), and the convicted felons in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the plaintiff here is being more harshly treated under the statute for reasons based largely on a factor that must be deemed impermissibly adventitious in its relationship to the disadvantage in question. There is no supportive strength for defendants in the supposed justification that the State has contrived to create two classes of tribunals—one meeting the elementary standard of impartiality, the other suspected of falling short. Without tarrying over the other dubieties in that thesis, it cannot justify the discrimination against the plaintiff and other unions like it; equal protection "is not achieved through indiscriminate imposition of inequalities." *Shelley v. Kraemer,* 334 U.S. 1, 22, 68 S.Ct. 836, 846, 92 L.Ed. 1161 (1948). Assuming the Legislature really had in mind the rationale defendants propose,[8] it is a dramatic exercise in unconsidered caprice. If impartial judges were thought adequate, they are available throughout the State. If only the State PERB were deemed adequate for the purposes at hand, it too could function throughout the State. But the legislature, however relaxed the standard, may not allocate procedural and substantive burdens of the kind here in question on an assortment of criteria having no rational connection with those who take the benefits or suffer the consequences.

### V.

 As is evident from the previous discussion, plaintiff has raised substantial, and most likely dispositive, objections to the provisions of the Taylor Law and the Judiciary Law governing the revocation of the dues check-off. In determining the appropriateness of preliminary injunctive relief, this factor is of considerable salience. See, e. g., *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115, 1121 (2d Cir. 1975);

*Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2 Cir. 1973); *C. Tennant & Sons v. New York Terminal Conference,* 299 F.Supp. 796, 798–99 (S.D.N. Y.1969). Other considerations include the relative importance of the rights asserted, the possibility of irreparable injury if relief is not granted, the hardship to the defendants if an injunction issues, and, finally, the public interest. See, e. g., *Brown & Williamson Tobacco Corp. v. Engman, supra. C. Tennant & Sons v. New York, supra.* These are not quantifiable elements. Here, however, they all weigh clearly in plaintiff's favor. Accordingly, plaintiff's motion for a preliminary injunction is granted. Defendants' motion to dismiss is denied.

The parties will settle an order.

---

8. There is, as often happens, no legislative history of any relevance. This does not mean defendants' thesis, presented in a brief, is weightless. Cf. *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809, 89 S.Ct.

1404, 22 L.Ed.2d 739 (1969). It does require, out of deference, that we be gingerly about attributing to a State Legislature a somewhat uninspired course of reasoning.