**BUFFALO TEACHERS FEDERATION, INC., Plaintiff,**

v.

**Robert D. HELSBY, Joseph Crowley and Ida Klaus, as Members of the New York State Public Employment Relations Board, Defendants.**

76 Civ. 4875 (JMC).

United States District Court,
S. D. New York.

March 18, 1981.

---

## OPINION

CANNELLA, District Judge:

After a trial on the merits of plaintiff's complaint, the Court finds for the defendants, and the complaint is dismissed.

## FACTS

Plaintiff, the Buffalo Teachers Federation ["BTF"], brings this action pursuant to 42 U.S.C. § 1983 seeking a judgment declaring the provisions of section 210.3 of the New York Civil Service Law unconstitutional as a violation of the equal protection clause of the fourteenth amendment and enjoining the Public Employment Relations Board ["PERB"] from determining a charge filed against the BTF on October 29, 1976 and revoking the BTF's dues checkoff privileges.[1] Plaintiff contends that the statutory scheme for punishing illegal public employee strikes by revocation of an employee organization's dues checkoff privilege, on its face and/or as applied, violates the equal protection clause because the penalty is imposed more frequently upon employee organizations under PERB's jurisdiction, such as the BTF, than upon employee organizations under the jurisdiction of local public employment boards, commonly referred to as mini-PERBs, or New York City's Office of Collective Bargaining ["OCB"]. Plaintiff claims that PERB must impose the penalty once it determines that a union-sanctioned strike has occurred which is far more severe treatment than that experienced by employee organizations under mini-PERB or OCB jurisdiction.

The BTF is the bargaining representative for professional employees of the Board of Education of the City School District of the City of Buffalo [the "Board"]. On Septem-

---

1. The defendants are the three members of PERB.

ber 7, 1976, the BTF commenced a fourteen-day strike, its second since the enactment of the Taylor Law in 1967. On October 29, 1976, PERB filed charges against the BTF seeking the revocation of its dues checkoff privilege, for alleged violation of the no-strike provision of the Taylor Law. On November 3, 1976, plaintiff filed its complaint along with a motion for a preliminary injunction, seeking to enjoin the PERB proceeding pending resolution of its constitutional challenge. Former Judge Frankel, to whom this action was originally assigned, subsequently granted plaintiff's motion for a preliminary injunction. *See* 435 F.Supp. 1098 (S.D.N.Y.1977).[2]

*The Taylor Law*

The Public Employees Fair Employment Act, commonly referred to as the Taylor Law, N.Y.Civ.Serv.Law § 200 *et seq.* (McKinney 1973) [the "Act"], was enacted in 1967 to foster the public policy of harmonious labor relations between governments and their employees. *See id.* § 200.[3] To promote this public policy, public employees were accorded certain rights, including the rights to organize, to have their chosen representative recognized, to engage in collective negotiation with their employer and to utilize effective grievance procedures. *Id.* §§ 202, 203, 204. Section 208.1(b) grants recognized or certified employee organizations the right to have membership dues regularly deducted from their members' paychecks, and section 208.3 grants such organizations the right to have an amount equivalent to the organization's dues deducted from non-members' salaries.[4]

---

2. The procedural history of this action is rather complex. Judge Frankel denied defendants' motion to transfer venue, *see* 426 F.Supp. 828 (S.D.N.Y.1976), and, at the time he granted plaintiff's preliminary injunction motion, denied defendants' motion to dismiss the complaint on abstention grounds. *See* 435 F.Supp. 1098 (S.D.N.Y.1977). Defendants then appealed the preliminary injunction order to the Second Circuit, but withdrew their appeal in January 1978 after Judge Goettel issued a decision in *Civil Service Employees Association, Inc. v. Helsby*, 439 F.Supp. 1272 (S.D.N.Y.1977) ["*CSEA*"], upholding the constitutionality of the statutory procedure for dues checkoff revocation. On September 6, 1978, Judge Frankel stayed federal proceedings in this action, referring certain state law questions to the New York state courts and reserving constitutional issues for the District Court. *See* Order (filed Sept. 7, 1978). Defendants then appealed Judge Frankel's stay to the Second Circuit, but, subsequently, the parties jointly moved to remand to the District Court, agreeing that any attempt to seek clarification from the state courts would be difficult and would indeterminably prolong this litigation. The parties further agreed to forego any procedural or abstention arguments that they might have and to litigate the merits of the constitutional issues in this Court. On January 9, 1979, following Judge Frankel's retirement, the action was remanded and assigned to this Court for further proceedings. Thereafter, the parties submitted cross-motions for summary judgment which the Court denied, at the same time vacating Judge Frankel's stay, *see* Memorandum Decision (filed Oct. 25, 1979). The Court then referred the action to United States Magistrate Joel J. Tyler to supervise pretrial discovery.

3. A succinct statement of the policy considerations underlying the Taylor Law is found in section 200:

The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote *harmonious and cooperative relationships between* government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized, (c) encouraging such public employers and such employee organizations to agree upon procedures for resolving disputes, (d) creating a public employment relations board to assist in resolving disputes between public employees and public employers, and (e) continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition.

N.Y.Civ.Serv.Law § 200 (McKinney 1973) (footnote omitted).

4. (a) The term "membership dues deduction" means the obligation or practice of a government to deduct from the salary of a public employee with his consent an amount for the payment of his membership dues in an employee organization. Such term also means the obligation or practice of a government to transmit the sums so deducted to an employee organization.

The Act creates PERB to "assist in resolving disputes between public employees and public employers," *id.* § 200(d), including disputes concerning representation status of employee organizations.[5] PERB is also granted broad powers to enforce section 209–a concerning improper employer and employee organization practices; to make studies; to obtain and to supply information; to hold hearings and to adopt rules and regulations. *See id.* § 205. PERB has statewide jurisdiction to impose penalties for violations of the Act's provisions. Section 210.1, the heart of the Act's regulatory scheme, prohibits strikes by public employees throughout the State. When it appears that the no-strike provision has been or will be violated, the Act provides certain remedies. The chief legal officer of the government involved in a labor dispute shall apply to the New York Supreme Court for an order enjoining an impending strike by public employees. *Id.* § 211. If the employees or their organization do not comply with the injunction, the chief legal officer "shall forthwith" institute criminal contempt proceedings in the Supreme Court pursuant to New York Judiciary Law § 750 (McKinney 1975). The Supreme Court, in its discretion, may fix a fine for each day the contempt persists. N.Y.Jud.Law § 751.2(a) (McKinney Supp.1980–1981).

In addition to the foregoing procedures, section 210.3 requires the chief legal officer, or PERB on its own motion, to institute administrative proceedings against the employee organization before PERB to determine whether the employee organization has violated section 210.1. In determining whether the employee organization violated section 210.1 by instigating or condoning the strike, PERB considers whether the employee organization called the strike or tried to prevent it and whether it made or was making a good faith effort to terminate the strike. N.Y.Civ.Serv.Law § 210.3(e) (McKinney 1973).

Once PERB determines that an employee organization has violated the no-strike provision of the Act, PERB "shall order forfeiture" of the membership dues and agency shop fees deductions for such period of time as PERB, in its discretion, deems appropriate. *Id.* § 210.3(f) (McKinney Supp.1980–1981). In determining the duration of the forfeiture, PERB

> shall consider all the relevant facts and circumstances, including but not limited to: (i) the extent of any wilful defiance of subdivision one of this section (ii) the impact of the strike on the public health, safety, and welfare of the community and (iii) the financial resources of the employee organization; and the board may consider (i) the refusal of the employee organization or the appropriate public employer or the representative thereof, to submit to the mediation and fact-finding procedures provided in section two hundred nine and (ii) whether, if so alleged by the employee organization, the appropriate public employer or its representatives engaged in such acts of extreme provocation as to detract from the responsibility of the employee organization for the strike. In determining the financial resources of the employee organization, the board shall consider both the income and the assets of such employee organization. In the event membership dues are collected by the public employer . . . , the books and records of such public employer shall be prima facie evidence of the amount so collected.

(b) The term "agency shop fee deduction" means the obligation or practice of a government to deduct from the salary of a public employee who is not a member of the certified or recognized employee organization which represents such employee for the purpose of collective negotiations conducted pursuant to this article, an amount equivalent to the amount of dues payable by a member. Such term also means the obligation or practice of a government to transmit the sums so deducted to an employee organization. *Id.* § 201.2 (McKinney Supp. 1980–1981).

5. PERB is an independent three-member board appointed by the Governor with the advice and consent of the Senate. *See id.* § 205.

*Id.*[6] PERB will not penalize an employee organization if its members have staged a "wildcat" strike. Moreover, although merely considered a factor in determining the duration of the penalty in section 210.3(f), PERB may not impose any forfeiture upon an employee organization when extreme employer provocation caused a union-sanctioned strike.[7] *See Report of the Joint Legislative Committee on the Public Employees Fair Employment Act*, N.Y. Legislative Document No. 25, at 20 (1972) [hereinafter "1972 Report"]. Absent some form of extreme provocation, however, PERB has interpreted the Act as requiring it to impose the forfeiture penalty, although PERB retains broad discretion in determining the duration of the penalty.

■ Section 212 of the Act[8] permits local governments, other than the State and a State public authority, to choose an alternative to PERB's state-wide enforcement of the Act. When authorized by local statute or ordinance, public employers[9] may create their own administrative boards to enforce the Taylor Law in their jurisdiction. These mini-PERBs[10] possess many of the same

6. In addition to the penalties imposed upon the employee organization during contempt proceedings or proceedings before PERB, the chief fiscal officer of the public employer shall deduct from a striking employee's salary an amount equal to twice his daily rate of pay for each day the strike continues. *Id.* § 210.2(g).

7. On five occasions PERB has found unions responsible for a strike but declined to impose the penalty. *See* Defendants' Exhibit D. In addition, PERB has an unwritten internal policy that if the circumstances of a particular case warrant less than a three-month dues checkoff suspension, PERB will decline to order any suspension. Transcript of Proceedings, *Buffalo Teachers Federation, Inc. v. Helsby, et al.*, 76 Civ. 4875 (JMC) at 73 (filed July 28, 1980) [hereinafter "Tr."].

8. Section 212 provides that the provisions of the Act, with certain exceptions, are inapplicable to

any government (other than the state or a state public authority) which, acting through its legislative body, has adopted by local law, ordinance or resolution, its own provisions and procedures which have been submitted to the board [PERB] by such government and as to which there is in effect a determination by the board that such provisions and procedures and the continuing implementation thereof are substantially equivalent to the provisions and procedures set forth in this article with respect to the state.

2. With respect to the city of New York, such provisions and procedures need not be related to the end of its fiscal year; and with respect to provisions and procedures adopted by local law by the city of New York no such submission to or determination by the board shall be required, but such provisions and procedures shall be of full force and effect unless and until such provisions and procedures, or the continuing implementation thereof, are found by a court of competent jurisdiction, in an action brought by the board in the county of New York for a declaratory judgment, not to be substantially equivalent to the provisions and procedures set forth in this article.

N.Y.Civ.Serv.Law § 212. Since section 210.3, which grants PERB the power to impose the dues checkoff forfeiture, is not listed among the sections of the Act that remain applicable to public employers creating mini-PERBs, such local boards are free to devise their own "substantially equivalent" procedures to revoke the dues checkoff privilege.

9. The term "government" or "public employer" means (i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission, or public benefit corporation, or (vi) any other public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state. *Id.* § 201.6(a). The Board is a public employer within the meaning of the Act. Although there are currently no mini-PERBs in the City of Buffalo, at one point in time, two mini-PERBs existed there—one governing the employees of the City of Buffalo and one governing the employees of the Board. The mini-PERB governing the Board existed from March 15, 1968 to December 1, 1969. It is therefore apparent that the jurisdiction of a mini-PERB is not limited on geographic grounds but is limited only by the public employer that creates it. Similarly, not all New York City-based unions are under the jurisdiction of the OCB since section 212 grants each individual public employer the option of creating its own mini-PERB.

10. There are presently 11 mini-PERBs, not including New York City's OCB. In 1976, there were 13 mini-PERBs. *See* Pre-Trial Order, Exhibit A, ¶ 6 (filed March 28, 1980). At one time there were as many as 35 mini-PERBs, although no application for the creation of a

powers as PERB since section 212 requires mini-PERBs to adopt procedures "substantially equivalent" to those used by PERB. Moreover, this section permits the creation of a mini-PERB only after PERB has found that the proposed regulations of the local government comply with the substantial equivalence standard. *See* Department of Civil Service Rules and Regulations, Part 203—*Procedures For the Approval or Review of Local Government Procedures Under Section 212 of the Act*, N.Y.Civ. Serv.Law (McKinney 1973) [hereinafter "PERB Rules"].

■ Any mini-PERB having jurisdiction over a public employer may impose the dues checkoff sanction administratively under its substantially equivalent procedures.[11] In addition, a court may impose the same sanction if it finds the union in contempt under section 751.2(a) of the New York Judiciary Law (McKinney Supp. 1980–1981), which provides in pertinent part:

> Where an employee organization . . . wilfully disobeys a lawful mandate of a court of record, or wilfully offers resistance to such lawful mandate, in a case involving or growing out of a strike in violation of subdivision one of section two hundred ten of the civil service law, the punishment for each day that such contempt persists may be by a fine fixed in the discretion of the court. In the case of a government exempt from certain provisions of article fourteen of the civil service law, pursuant to section two hundred twelve of such law [mini-PERB and OCB Governments], the court may, as an additional punishment for such contempt, order forfeiture of the rights [to membership dues and agency shop fees deductions]. . . .

Accordingly, a public employer that initiates a contempt proceeding in a mini-PERB jurisdiction may request the court to impose the dues checkoff sanction in lieu of initiating administrative proceedings. The Court may impose that penalty in addition to levying a fine.[12] This procedure is different from that available to employers under PERB's jurisdiction since the dues checkoff forfeiture can only be imposed administratively by PERB on unions found to have violated the Act, and is not available in the context of contempt proceedings.

The authority of mini-PERBs to impose the dues checkoff sanction administratively may be curtailed when the employer has already instituted contempt proceedings. In that situation, PERB, in considering the substantial equivalence of local procedures, encourages mini-PERBs to provide in their local regulations that administrative procedures to impose the sanction will not be available when contempt proceedings have been terminated on the merits. *See* PERB, *A Guide to the Preparation of Local Enactments Pursuant to Section 212 of the Civil*

---

mini-PERB has been approved since 1969. *See* Tr. at 60. The Pre-Trial Order erred in stating that the maximum number of mini-PERBs was 31.

11. PERB will not approve mini-PERB plans which do not include administrative provisions for the revocation of a dues checkoff deduction. *See* PERB Rules, § 203.7; Tr. at 10.

12. Section 751.2(a) of the New York Judiciary Law (McKinney Supp.1980–1981) provides that a court will consider the same factors as those considered by PERB under N.Y.Civ.Serv.Law § 210.3(f) in determining the duration of the dues checkoff forfeiture:

> In fixing the amount of the fine and/or duration of the forfeiture, the court shall consider all the facts and circumstances directly related to the contempt, including, but not limited to: (i) the extent of the wilful defiance of or a resistance to the court's mandate (ii) the impact of the strike on the public health, safety, and welfare of the community and (iii) the ability of the employee organization to pay the fine imposed; and the court may consider (i) the refusal of the employee organization or the appropriate public employer, as defined in section two hundred one of the civil service law, or the representatives thereof, to submit to the mediation and fact-finding procedures provided in section two hundred nine of the civil service law and (ii) whether, if so alleged by the employee organization, the appropriate public employer or its representatives engaged in such acts of extreme provocation as to detract from the responsibility of the employee organization for the strike. In determining the ability of the employee organization to pay the fine imposed, the court shall consider both the income and the assets of such employee organization.

*Service Law* 11–12 (rev. 1968) [the "*Guide*"].[13] The purpose of this restriction on administrative penalties is to prevent the imposition of double penalties.

Special provisions are made for New York City under the Taylor Law. Section 212.2 provides that the procedures adopted by the City of New York need not be approved by PERB before becoming effective, although they must be substantially equivalent to PERB's procedures. PERB may, however, bring a declaratory judgment action in New York County to declare New York City's procedures not substantially equivalent to PERB's procedures. To date, PERB has never instituted such an action. *See* Pre-Trial Order, Exhibits A–1, A–2. In 1967, pursuant to section 212.2, New York City enacted its own public employment relations law, the New York City Collective Bargaining Law ["NYCCBL"]. *See* New York City Charter and Administrative Code, Ch. 54, § 1170 *et seq.* (1967). The NYCCBL established an Office of Collective Bargaining ["OCB"] and a Board of Collective Bargaining ["BCB"] possessing many of the same powers as PERB. The BCB consists of seven members: two "city" members appointed by the mayor, two "labor" members appointed by the municipal labor committee and three "impartial members" elected by the city and labor members. *See id.* § 1171. Due primarily to the tripartite structure of the BCB,[14] New York City declined to adopt an administrative dues checkoff forfeiture procedure similar to the one contained in section 210.3 of the Act. Consequently, the dues checkoff forfeiture may not be imposed administratively, but only by a court as a penalty for criminal contempt under the provisions of section 751 of the New York Judiciary Law.

The NYCCBL, as enacted in 1967, provided for the mandatory coverage of all mayoral agencies of the City of New York, although non-mayoral agencies could come under its jurisdiction at the option of the agency employer and with the approval of the mayor. Those non-mayoral agencies not opting for OCB coverage automatically remained under PERB's jurisdiction.

In their Pre-Trial Order (filed March 28, 1980), the parties agree that from September 1, 1967 through December 31, 1978, there have been twelve work stoppages in mini-PERB jurisdictions. *Id.*, Exhibit A, ¶ 11.[15] In none of these cases are the parties aware that the public employer sought an injunction or instituted contempt proceedings in state court. Consequently, the parties agree that no court has ever imposed the dues forfeiture in the context of a section 751 mini-PERB contempt proceed-

---

**13.** There is some question concerning whether a mini-PERB has jurisdiction to impose the dues forfeiture penalty if contempt proceedings are instituted in the New York Supreme Court. Plaintiff, relying on section 203.7 of the PERB Rules, argues that mini-PERB administrative procedures are not applicable if contempt proceedings are commenced. Defendants, on the other hand, support the position taken in the *Guide*, to the effect that mini-PERBs are encouraged to avoid the imposition of a double penalty by inclusion of the following clause in the local ordinance, which limits a mini-PERB's power only when a court issues a judgment on the merits:

> [Mini-PERB procedures to impose the forfeiture will apply] unless an application to punish for contempt has been made in accordance with and pursuant to the last sentence of Section 211 of the Civil Service Law and such application terminates in a judgment on the merits.

The *Guide* at 12 (footnote omitted); *see* Tr. at 14–15. Only the Delaware and Nassau County mini-PERBs have adopted such a limiting provision. *Id.* at 12. The Court finds it unnecessary to determine this question of state law since it concludes that even if a mini-PERB's authority to impose the penalty administratively is so limited, this difference in procedure is rationally related to furthering the legitimate state interest in local control of public labor disputes.

**14.** Although the BCB is the only tripartite board currently in existence, PERB would approve a mini-PERB plan creating a tripartite board. *See* The *Guide* at 7.

**15.** Of these twelve stoppages, defendants presented evidence that six were "wildcat" walkouts for which the employee organizations could not be penalized, two were not considered to be strikes by the employer and thus no charges were filed, and in three cases the dues checkoff forfeiture was imposed although it was remitted in one instance upon payment of a $60,000 fine. *See* Defendants' Post-Trial Memorandum of Law at 15–16 (filed June 12, 1980).

ing. Tr. at 80. In two of these cases, the mini-PERBs involved imposed the dues forfeiture administratively, and in a third, the mini-PERB imposed the forfeiture which was later remitted upon the payment of a $60,000 fine to the county.[16] In addition, the parties submitted evidence that in 1979 two work stoppages occurred in mini-PERB jurisdictions—a Nassau County strike involving employees of the Department of Public Works, which is currently pending before the Nassau County mini-PERB in which the hearing officer recommended the imposition of the forfeiture for two pay periods (one month), see Plaintiff's Exhibit 9, and a work stoppage by Westchester County employees in which the mini-PERB found there was no strike. Tr. at 35.

From 1967 to 1978, there have been eighteen work stoppages affecting employers under OCB's jurisdiction. See Pre-Trial Order, Exhibit A, ¶ 12. In only one case, however, did a court impose the dues checkoff forfeiture, but the penalty was subsequently remitted. *The City of New York v. DeLury*, Index No. 40251/1968 (Sup.Ct., N.Y. County filed June 4, 1970). In contrast, during the same period, there were approximately 200 work stoppages under PERB's jurisdiction resulting in 146 charges filed by PERB and 28 charges filed by public employers. Tr. at 66. PERB has imposed the penalty for some period of time in 141 of these cases, or 96.4% of the time. Pre-Trial Order, ¶ 10.

Plaintiff contends that this statutory scheme is unconstitutional on its face as a denial of equal protection since it creates classifications of public employee organizations—those under the jurisdiction of PERB, mini-PERBs and OCB—which are not rationally related to a legitimate state interest. Moreover, based on the allegedly disparate enforcement statistics, the plaintiff contends that the statutory scheme as applied violates the equal protection clause. Plaintiff argues that section 210.3(f) creates a mandatory standard by providing that PERB "shall" impose the forfeiture when it finds a union-sanctioned strike, although section 751.2 of the Judiciary Law creates a permissive standard by providing that the courts "may" impose the forfeiture upon a union under the jurisdiction of a mini-PERB or OCB as a penalty for contempt of an order enjoining a public employee strike. Plaintiff relies on PERB's statement that the penalties have not been administered in an "evenhanded" manner in the three jurisdictions and its assessment that such treatment is "inequitable." *See In re United Federation of Teachers, Local 2*, 9 PERB ¶ 3071, at 3129 n.2 (1976).[17] In short, plaintiff argues that the different treatment experienced by unions under PERB's jurisdiction when compared to those under a

---

16. Plaintiff contends that of the 15 work stoppages in mini-PERB jurisdictions discussed at trial, the public employers and mini-PERBs only found sufficient union involvement to bring charges in four cases, or 26.6% of the time. *See* Plaintiff's Post-Trial Memorandum at 13 (filed May 29, 1980). In particular, plaintiff argues that the Westchester County mini-PERB's finding that a 1979 three-day work stoppage by 100 county employees did not constitute a strike is indicative of the mini-PERBs' failure to investigate work stoppages as thoroughly as PERB, which brings charges in 85% of its cases. Plaintiff also contends that mini-PERBs rely to a great degree on prosecutorial discretion. Plaintiff does not contend, however, and there is no evidence to support a finding, that the mini-PERBs enforce the penalty provisions in a discriminatory fashion. Even if the Court agreed that mini-PERBs have a less stringent enforcement attitude than PERB, which is not apparent on the present factual record, such a difference is rationally related to

the state's interest in furthering local control of public employment relations.

17. Footnote two of this opinion is set out in full below:

We are also concerned that the administrative machinery provided by the Law does not insure a standard of evenhandedness in the imposition of the statutory penalty of forfeiture of dues deduction privileges. This Board lacks jurisdiction to deal with strikes involving public employees of mayoral agencies of the City of New York, and of the other thirteen local governments which currently have a mini-PERB (CSL § 212). Public employee organizations that strike against such agencies may have their dues deduction privileges suspended only by a court, and then only as punishment for contempt of the court's order. Eighteen strikes by such employee organizations have occurred since the advent of the Taylor Law, and in no case has there been any suspension of the dues deduc-

mini-PERB's or OCB's, depends upon the fortuitous circumstance of geography or the whim of a public employer.

## DISCUSSION

■ Plaintiff does not contend that the statutory scheme for enforcement of the

tion privileges of the striking employee organization. By contrast, there have been 135 charges filed against employee organizations deemed responsible for strikes that were subject to the jurisdiction of this Board. There were an additional 34 strikes by employees subject to this Board's penalty jurisdiction in which no charge was filed. In these cases, Board Counsel determined that the evidence did not support a charge against any employee organization. This Board has ordered the suspension of dues check-off privileges in 108 cases, found no penalty warranted in 4, and dismissed or authorized withdrawal of such charges in 19 cases. The remaining cases are pending.

We make no judgment as to whether there should or should not be penalties for strikes of public employees or, indeed, whether such strikes should be legal, as they are in some states. Neither do we make a judgment as to the form or scope that penalties should have. But, it is a matter of simple justice that any statutory penalty provision[s] should be uniform in their application to all employee organizations throughout the State. This inequity is not a basis for imposing a lesser penalty herein for the statute does not give us that discretion; rather, we feel compelled to bring this inequity to the attention of the Legislature for whatever remedy it considers appropriate.

It is apparent from this footnote that the members of PERB, like former Judge Frankel, mistakenly believed that the dues checkoff forfeiture could be imposed only during contempt proceedings in mini-PERB jurisdictions. *See Buffalo Teachers, supra,* 435 F.Supp. at 1101. In fact, as noted above, it may be imposed by the mini-PERBs under their own "substantially equivalent" administrative procedures.

PERB was not alone, however, in recommending a change in the present statutory scheme. The Joint Legislative Committee on the Act recognized that the present decentralized system of enforcing the forfeiture penalty in practice yielded less than uniform results:

PERB has the responsibility for administration of the penalty of withdrawal of the dues checkoff in connection with illegal strikes except in New York City and in the jurisdiction of upstate mini-PERBS where local procedures have been adopted pursuant to Section 212 of the Taylor Law. In these jurisdictions Section 210.3 and 210.4 of the Taylor Law do not apply and as a result PERB is

forfeiture, either on its face or as applied, interferes with the exercise of a fundamental right or operates to the particular disadvantage of a suspect classification, which would require strict judicial scrutiny. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36

without jurisdiction in the enforcement of this penalty.

Insofar as the mini-PERBS are concerned, PERB requires that they assert jurisdiction to enforce this penalty. The mini-PERBS, however, are not as well prepared as PERB to enforce this penalty and consequently are not able to do so on a uniform basis. PERB is not in a position under the law to require OCB in New York City to assert such jurisdiction and such jurisdiction is not provided by the local legislation in New York City under which OCB operates.

Under Section 751 of the Judiciary Law the courts are given the power to withdraw the dues checkoff as part of the penalty for contempt of court arising in connection with an illegal strike in New York City and in the jurisdiction of upstate mini-PERBS. The court is in a position to enforce this penalty only in those cases which come before it and in which an injunction has been issued and has been violated. The court tends to use the penalty as a discretionary tool in settling strikes and/or as punishment. Consequently, in the local governments which have taken advantage of the opportunity to establish local procedures under Section 212 of the Taylor Law, this penalty is not administered in the same fashion as in the remainder of the state.

As a matter of principle something can be said in behalf of uniform enforcement. In addition, the prospect of withdrawal of the dues checkoff where a strike occurs provides a very significant deterrent to strikes. Consequently, it is felt that PERB should be given exclusive jurisdiction to determine whether an organization which has engaged in a strike should forfeit its right to the dues checkoff, and if it is determined that forfeiture is in order, the length of time the checkoff privilege shall be withheld. As is the case currently with Subdivision 1 and 2 of Section 210 of the Taylor Law, Subdivision 3 and 4 would be made applicable where local procedures have been adopted. Subdivision 3 relates to the steps followed in applying forfeiture of the checkoff. Subdivision 4 relates to mandating a public report concerning a strike, those involved, and the sanctions imposed, or proceedings pending.

1972 Report at 30. Despite such criticism, the State Legislature has on two occasions declined to amend the challenged statutory procedures.

L.Ed.2d 16 (1973). Rather, since this challenge to the dues checkoff forfeiture procedures involves issues within the economic sphere, the appropriate standard of review is to determine whether the challenged statutory scheme is " 'rationally related to furthering a legitimate state interest.' " *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979) (quoting *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976)); *Civil Service Employees Association, Inc. v. Helsby*, 439 F.Supp. 1272, 1277 (S.D.N.Y.1977) ["*CSEA* "]; *Buffalo Teachers Federation, Inc. v. Helsby*, 435 F.Supp. 1098, 1103–04 (S.D.N.Y.1977) ["*Buffalo Teachers* "]. If so, the statutory scheme is constitutional, and plaintiff's complaint must be dismissed.

■ In applying this standard, the Court recognizes that the equal protection clause of the Constitution does not deprive the states of all power of classification, *see Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 271, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979), and that the role of the Court is limited. "The primary responsibility for determining the manner in which a particular law will affect society is upon the legislative branch and not the judiciary." *Finkel v. New York City Board of Education*, 474 F.Supp. 468, 471 (E.D.N.Y.1979), *aff'd mem.*; 622 F.2d 573 (2d Cir. 1980). The Supreme Court has articulated the judiciary's role in this regard:

> The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwar-

ranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley, supra*, 440 U.S. at 97, 99 S.Ct. at 943 (footnote omitted).[18] Therefore, plaintiff must sustain a heavy burden of proof if it is to succeed in this action. *Id.* at 111, 99 S.Ct. at 950; *The National Organization for the Reform of Marijuana Laws v. Bell*, 488 F.Supp. 123, 137 (D.D.C. 1980).

Plaintiff urges the Court to adopt former Judge Frankel's conclusion that the statutory scheme and its application is not rationally related to a legitimate state interest. Although Judge Frankel acknowledged that the State Legislature enacted the section 212 option for creating local public employment boards based upon its recognition that " 'local political units are often in the best position to understand and deal with the problems affecting their employees' and should be given 'flexibility in devising local solutions to matters of employee representation and collective negotiations,' " *Buffalo Teachers, supra*, 435 F.Supp. at 1104 (quoting N.Y. State Legislative Annual 273–74 (1967) (memorandum of Governor Rockefeller issued upon approval of the legislation), he concluded that this rationale did not justify the application of a mandatory standard for imposing the penalty under PERB's jurisdiction and a permissive standard under the jurisdiction of mini-PERBs and OCB. Judge Frankel stated that the

---

18. Similar sentiments were expressed by Justice Stewart in *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Nat-*

*ural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70 [33 S.Ct. 441, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].

only difference between the unions subject to PERB's jurisdiction and those within the province of the courts is the accident of whether they operate under a governmental unit which has opted for local control under § 212 of the Act. The difference is utterly fortuitous, and cannot justify in any remotely rational sense the result that the unions finding themselves willy nilly under PERB's control suffer more severe punishment for engaging in prohibited work stoppages than do those unions under local control.

*Id.* at 1105.

■ The Court cannot agree that the classification challenged by plaintiff lacks a rational basis. When enacting the Taylor Law, the State Legislature was faced with a choice of creating either a uniform statewide system or a decentralized scheme to regulate public employee relations. Tr. at 132–34. Recognizing that labor relations in New York City had developed more quickly and in a more complex pattern than throughout the remainder of the State, and intending to permit such individualized development elsewhere, the Legislature created the present system in which a public employer through local legislation can create its own "substantially equivalent" procedures to enforce the Taylor Law, including its dues checkoff forfeiture penalty.

Having compared mini-PERB and PERB procedures, the Court cannot accept the argument urged by plaintiff here and accepted by Judge Frankel, that mini-PERBs apply a different standard in imposing the penalty since a public employer in a mini-PERB jurisdiction has the option of seeking the penalty in the context of contempt proceedings pursuant to N.Y. Jud. Law § 751.2. *First*, the mini-PERBs must have administrative procedures that are "substantially equivalent" to PERB's procedures, and must utilize such procedures absent a court judgment on the merits in a contempt proceeding. *Second*, the Court does not agree that the mere use of the word "shall" in section 210.3(f) of the Act and "may" in section 751.2 of the Judiciary Law creates different standards for the imposition of the penalty. The criteria for imposing the penalty in those sections are identical for both PERB and the courts. Rather, this difference in statutory language, as Jerome Lefkowitz, the Deputy Chairman of PERB testified, was created in an attempt to retain consistency in the style of the Judiciary Law, Tr. at 138, and was intended to give the courts the same power to impose the penalty as PERB possessed. *Id.* Not surprisingly, this decentralized system has not produced uniform enforcement statistics. But even if the statistical evidence produced by plaintiff indicates that mini-PERBs and the courts have applied the same criteria for imposing the penalty in a somewhat different fashion than PERB, the difference in application is clearly rationally related to the legitimate state interest in fostering local control of public labor relations. Moreover, there is no evidence that the enforcement experience of the three jurisdictions results from selective enforcement of the penalty.

The Court agrees with Judge Goettel that the difference in treatment, if it can be viewed as one, is not an accident of geography or the result of legislative caprice. The differing scheme arises only if a local government decides to establish local machinery for the supervision of public labor disputes. This exercise of local initiative is encouraged by the Taylor Law in an effort to promote more sensitive governmental responses to the particular problems of local public employees. Giving the mini-PERBs the limited option to pursue all the available remedies against a union in violation of the Act through a contempt action is one way in which the Act attempts to allow local administrators, who no doubt do not enjoy the resources of the PERB, an extra degree of flexibility. Certainly, this option cannot be viewed as "wholly irrelevant to the achievement of the State's objective" of increased local discretion. *McGowan v.*

*Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). *CSEA, supra,* 439 F.Supp. at 1278.[19]

With respect to the procedures used by OCB, in which the penalty can be imposed only in the context of contempt proceedings, the Court again agrees with Judge Goettel that this classification is rationally related to furthering a legitimate state interest in "allowing local governments to develop their own machinery to supervise their own public employees." *Id.* at 1280. The State Legislature recognized that the complex historical development of New York City's public employment relations required flexibility to achieve the Taylor Law's overall goal of fostering amicable public labor relations,[20] and that uniform statewide procedures might not advance this goal. Moreover, although mini-PERBs are also authorized to create tripartite boards, to date the BCB is the only tripartite board in existence, and its composition justifies the conclusion that the BCB should not be required to have the same administrative enforcement procedures as PERB and mini-PERBs. Tr. at 143.

■ Of course, whether the procedures of the mini-PERBs and OCB and their application are "substantially equivalent" to PERB's is a question of state law that this Court cannot answer. As in *Shanker v.*

*Helsby,* 515 F.Supp. 871 (S.D.N.Y.1981), also decided today, plaintiff's arguments plainly question the wisdom of the present statutory scheme and whether it truly accomplishes its goal of ensuring amicable public labor relations. As has often been recognized, however, legislative classifications that have a rational basis but which imperfectly effectuate the State's goals or in practice result in some inequality are not unconstitutional. While plaintiff would prefer that the dues forfeiture be enforced uniformly throughout the State and City of New York, persuasive arguments based upon interests of local control could be voiced in opposition. In the end, the choice must be made by the State Legislature which is no doubt keenly aware of the criticism of the current statutory scheme. *See Vance v. Bradley, supra,* 440 U.S. at 108, 99 S.Ct. at 948; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Finkel v. New York City Board of Education, supra,* 474 F.Supp. at 471–72. Since the Court concludes that the statutory scheme for the imposition of the dues checkoff forfeiture, on its face and as applied, is rationally related to furthering the legitimate state interest in harmonious public labor relations and their local control, the statutory scheme does not violate the BTF's right to equal protection of law.

**19.** The Court disagrees with plaintiff that the major underpinnings of Judge Goettel's decision in *CSEA* are incorrect. *See* Plaintiff's Post-Trial Memorandum at 18–21 (filed May 29, 1980). The true basis of Judge Goettel's decision is that the State has a legitimate interest in permitting local control of public employment relations, and that therefore some difference in the imposition of the penalty is constitutionally permissible. Moreover, the Court does not agree that the Act did not intend mini-PERBs to play a major role in imposing the penalty. *See id.* at 21. The Act requires mini-PERBs to have substantially equivalent procedures, which include administrative procedures for dues checkoff forfeitures.

**20.** Judge Goettel's conclusion is supported by the following statement of the Joint Legislative Committee:

The provisions in the Taylor Law permitting a local system in New York City reflected

legislative recognition that public employee relations for New York City employees had developed more rapidly and in a somewhat different pattern than elsewhere in the state. It apparently was concluded that some degree of flexibility was appropriate in New York City rather than the imposition of a structure which might have disrupted the organizations and relationships developed over a substantial period of time.

1972 Report at 21.

Similarly, the Joint Legislative Committee noted that "[t]he flexibility thus provided to New York City has made it possible for the City to continue, with some important changes, the public employee relations system which predated the Taylor Law." *Id.* at 16. The pre-Taylor Law system was far more complex than others that had developed throughout the State. *See id.* at 7–9, 21–25.

## CONCLUSION

In accordance with the foregoing, since plaintiff has not proved the claim contained in its complaint, the complaint is dismissed. The preliminary injunction previously issued in this action is hereby vacated.

These are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Submit Judgment on Notice.

SO ORDERED.